For the error in the charge the judgment of the trial court is reversed and the cause is remanded.

**TEXAS SHOP TOWEL, Inc. v. HAIRE.**

No. 12369.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 30, 1952.

Rehearing Denied Feb. 27, 1952.

Gibbon & Johnson, Harlingen, for appellant.

Greenwood & Ellis, Harlingen, for appellee.

POPE, Justice.

This is a suit for breach of contract, for money had and received, and for an injunction, brought by Texas Shop Towel, Inc., as buyer, against W. S. Haire, the seller of a business. Haire is charged with the violation of a contract restricting competition. The trial court rendered judgment upon a jury verdict that was favorable to the appellee, Haire.

On April 1, 1950, appellant, Texas Shop Towel, Inc., purchased from appellee, W. S. Haire, a business of renting and delivering shop towels. At the time of the sale Haire had two regular routes and employed two routemen as his agents and employees, one of whom was Frank Bell. For a consideration of twelve thousand dollars, appellee, Haire, expressly agreed "That he, his agents, servants and employees will forthwith cease and desist from operating a rental service for shop towels and fender covers * * *." The restrictions in the contract extended to nineteen counties and the duration of the contract was for five years. After the sale, Haire retained and continued to operate an industrial laundry and waste rag route, but those activities were not proscribed by the contract. He also kept some towels which he later sold to Bell at the market price, and that transaction was not prohibited by the contract.

Since Bell, as the routeman, knew the names of Haire's customers, he spent several days introducing the customers to the new owner of the business. Bell, for the most part, was the only person who knew the customers, but he at no time owned any interest in the laundry and rag business retained by Haire, nor in the business sold by Haire. On July 1, 1950, Bell opened and commenced a competing business known as the Bell Towel Service.

This suit is against Haire, and Bell was not made a party defendant. Special issues were submitted without any objection, and all were answered favorably to appellee, Haire. By those findings, the jury decided that Bell, *while employed by Haire,* did not solicit business for himself within the restricted territory; that Haire did not aid or assist Bell in the operation of the business in competition with that of appellant, Texas Shop Towel, Inc.; that Haire did not induce Bell to engage in the competitive business; that Haire did not abet Bell in that competition; that the Bell Towel Service was not a subterfuge used by Haire to engage in business against appellant; and, more significant than any of the other answers to the special issues, that the Texas Shop Towel, Inc., suffered no damages by reason of competition by Bell Towel Service, Inc.

Appellant seeks to overcome the effect of these answers by points stating that it was entitled to an instructed verdict, that

the court should have granted its motion for judgment notwithstanding the verdict, and that the jury findings are against the overwhelming weight of the evidence. Appellant further complains that the court committed error in sustaining exceptions to the pleadings that alleged a custom of the trade for employers to require restrictive covenants from employees such as routemen, and also in excluding its proffered amended pleadings and evidence relating to the same subject.

On the basis of the answers to the special issues submitted without objection, we think the judgment must be affirmed. From those special issues, it is apparent that the theory submitted to the jury, without objection, was that the contract prohibited Haire, either himself or through any employee, in the future, during the term of the restriction, from re-engaging in the competitive business. The jury, on what we consider disputed evidence, decided that Haire had not violated that provision of the contract.

■ The only other possible method that Haire could be held to have violated the contract would be to construe the contract to mean that neither Haire nor any of his employees, as of the date of the contract, would so engage in the competitive business. Appellant, to prove this phase of its case, alleged a general custom prevailing in the business to employ routemen by written contracts restricting such employees from engaging in the competitive business with his employer, even after the employment ceased. The court sustained exceptions to this pleading, refused the filing of a trial amendment which asserted such custom as of April 1, 1950, and excluded all of appellant's proffered evidence relating to such custom and usage. We concur in each of those rulings.

■ If appellant had been permitted to plead and if it had proved that such a custom existed, still we do not think that an employer by his contract with a third person could bind all his employees. We do not think an employer's right to contract includes the right to dispose of the rights of an employee who is equally a free contracting person. The freedom to contract, even to the restriction of competition, exists between a buyer and seller, as well as an employer and his employee, but it does contemplate a contract. It is one thing for an employee voluntarily to surrender his known rights; it is vastly different when an employee is placed under servitude by a contract to which he is not a party and about which he may know nothing. While Bell is not here sued, were we to hold that proof of such a custom may be made, we think it would mean that it could also be made where the employee is a party. But in a contract restricting trade, we do not think that an employee's individual right and freedom to contract may be traded away by a third person, even by the third party's express contract.

■ Where an employee makes a contract restricting his right to compete, and provides further that the contract is assignable, an employer may assign the contract. Those are cases in which the employee, not the employer, has controlled his future rights. Blaser v. Linen Service Corporation of Texas, Tex.Civ.App., 135 S.W.2d 509; Linen Service Corporation of Texas v. Myres, Tex.Civ.App., 128 S.W.2d 850; Martin v. Hawley, Tex.Civ.App., 50 S.W.2d 1105; Jennings v. Shepherd Laundries Co., Tex.Civ.App., 276 S.W. 726.

■ But, because an owner of a business may require from his employee a covenant not to compete; it does not follow that he can transfer the covenant to a buyer without the consent of the employee. "An executory contract for personal services cannot be assigned by the employer, unless the employee assents to the substitution of the assignee as employer." Chapin v. Longworth, 31 Ohio St. 421; Pestel Milk Co. v. Model Dairy Products Co., Ohio App., 52 N.E.2d 651.

■ Contracts restricting trade and competition are frowned upon, even when they are express and are reasonably limited to time, territory and subject matter. The custom here sought to be engrafted upon the contract between appellant and appellee

not only would require us to bring in a new restriction and a separate contract binding upon a different person, but would require us to determine by custom the time the employee's covenant would endure, the territory it would reach, the conduct restricted, and also allow the assignability of the contract. We think the court properly ruled, as a matter of law, that restrictive covenants cannot be so extended by custom and implication. To do otherwise would be to create an entire restrictive contract by custom.

However, we must see what the employer's contract prohibited for the time and in the territory covered by it. Haire agreed that "he, his agents, servants and employees will forthwith cease and desist from; * * * the business of renting shop towels and fender covers * * *" for the time and in the territory stated. This contract was made on April 1, 1950. While the employees, who did not voluntarily surrender their right to labor and compete, would not be bound by the contract, the question here is whether Haire, who agreed that certain competition would not exist, can retain the consideration he received, when it becomes apparent that such competition does exist. Haire could make any agreement he wanted, and, while he could not bind his employees, he could bind himself. If he chose to contract about a matter over which he has no control, he may have made a foolish contract, but that does not excuse him from its terms. If the agreement means that Haire contracted that appellant would be free from competition from his then employees he would be bound to the duty he assumed. We do not so interpret the contract.

Appellant relies upon the case of Tode v. Gross, 127 N.Y. 480, 28 N.E. 469, 13 L.R.A. 652, for the proposition that a covenantor may, if he wants to, assume the risk of another's conduct. In that case a covenantor was held liable for the damages stipulated in the contract for its breach. The covenantor was the owner of a cheese factory. She, her husband, her father, and brother-in-law were the only ones who knew a secret formula, and those persons were the covenantor's agents. When she sold her business she sold also her secret process, and she covenanted that she, as well as "said Conrad Gross, John Hoffman, and August Gross will refrain from communicating the secret recipe and instructions for the manufacture of said cheeses, * * *." She also covenanted that none of those expressly named persons would re-engage in the business for a designated period of time. One of those named relatives did thereafter use the secret process and manufactured cheese under exactly the same trade name. We do not think that case is in any way applicable to this case.

In the first place, that case concerned a trade secret which the covenantor owned. Her agents did not own it. An owner may protect a trade secret even in the total absence of any contract with his employees, and the agents and employees who learn of the trade secret or secret formula are prohibited from its use. In the case of a trade secret, a contract does not create the right, for the right exists by reason of the confidence. It will exist in the total absence of a contract. A contract may be additional evidence of the existence of the trade secret but an owner's rights in his secrets do not depend upon a contract. Todd Protectograph Co. v. Hirschberg, 100 Misc. 418, 165 N.Y.S. 906; New Method Die & Cut-Out Co. v. Milton Bradley Co., 289 Mass. 277, 194 N.E. 80; Aronson v. Orlov, 228 Mass. 1, 116 N.E. 951, certiorari denied, 245 U.S. 662, 38 S. Ct. 61, 62 L.Ed. 536. In the Tode case the owner had complete control over a trade secret which belonged to her, and not to her agents, whereas in the instant case there is no claim to a trade secret. The covenantor in that case sold her trade secret, over which she had complete control, against anybody who came into possession of the secret while employed by her. But an ordinary customer list is not generally considered a trade secret. Excelsior Laundry Co. v. Diehl, 32 N.M. 169, 252 P. 991; New York Towel Supply Co. v. Lally, Sup., 162 N.Y.S. 247; Boone v. Krieg, 156 Minn. 83, 194 N.W. 92; Stein v. National

Life Ass'n, 105 Ga. 821, 32 S.E. 615, 46 L. R.A. 150; Wiggins Chemical Co. v. Berry, 7 Cir., 46 F.2d 622; Woolley's Laundry v. Silva, 304 Mass. 383, 23 N.E.2d 899, 126 A.L.R. 752.

In addition to the trade secret which was such a matter over which its owner had control over users to whom it had been disclosed in the necessary course of their employment, the Tode case was one in which the contract between the seller and buyer was clear, express and explicit. The covenantor there named the agents who knew the secret and then by her covenant expressly assumed the risk that they would not betray her secret, in which event she agreed to pay five thousand dollars. There is little 'difficulty when the parties spell out what they mean. Contracting parties frequently assume the risk of matters over which they cannot control. Shaw Oil Corp. v. Parker, Tex.Civ.App., 61 S.W.2d 587; Kingsville Cotton Oil Co. v. Dallas Waste Mills, Tex.Civ.App., 210 S.W. 832; Northern Irr. Co. v. Watkins, Tex.Civ. App., 183 S.W. 431.

■ But covenants in restraint of trade do not rest upon inference. The restraints must be stated. Houston Transfer & Carriage Co. v. Williams, Tex.Com.App., 221 S.W. 1081; Owen v. Willis, Tex.Civ.App., 20 S.W.2d 338.

"The agreement will not be extended by implication; and it will be construed in favor of rather than against the interest of the covenantor." 36 A.Jur.Monopolies, etc., § 57.

■ The interpretation sought by appellant in this case must be read into words that are vague, doubtful, and have a double meaning. When one covenants to assume a risk of another person's conduct over which he has no control, and that risk relates to a contract in restraint of trade, the parties must not leave its meaning to implications and inferences, nor may they rely upon words of vague, doubtful and double meaning. While the Tode case was one in which the parties expressed their meaning by clear and certain words, the contract before us is capable of an interpretation to mean either one of two different results.

■ Moreover, we think the reasonable interpretation of the contract is that Haire agreed that he would not directly nor indirectly compete with appellant. The jury found that Haire had complied with that agreement. We must determine the meaning of the contract from its words which were selected by the parties. The contract does not purport to bind any individuals other than Haire. On the contrary, in addition to Haire, a certain class or category of persons having a definite legal relationship to Haire is designated. The contract does not refer to nor attempt to bind those persons as individuals who at the time of the making of the contract were the agents or servants of Haire, but applies to those persons who may, during the five year restrictive period, bear the relationship of agent, servant or employee to Haire. Over these, Haire may exercise a measure of control. Over those who have ceased to be members of the class of agents, servants or employees, he can, of course, exercise no control. Their actions obviously could not be controlled by injunction predicated upon the contract involved as they are not parties to it.

It is asserted by appellant that, under the construction adopted, the words, "agents, servants and employees" are given no effect, for if the contract named Haire alone, the law would imply a restraint upon those under his direction. Even if we accept appellant's premise of identity in legal effect of the actual contract and the hypothetical one suggested, we would have nothing more than an explicit statement of a provision in the actual contract instead of an implied provision to the same effect in the hypothetical contract. An explicit statement of a provision or term which the law would regard as implicit in the contract, in the absence of other circumstances, cannot be made a basis for giving the contract another and different construction. If that were so, it would be dangerous for any one preparing a contract to state explicitly thereon what the law implies. The practice of stating plainly and clearly in words those terms which the law implies has its advantages.

We do not think Haire agreed that Bell, his former employee, would not compete with his buyer, and the judgment is affirmed.