C. B. ROBERTSON, Appellant,

v.

Mona ROBERTSON, Appellee.

No. 6607.

Court of Civil Appeals of Texas.

Amarillo.

May 21, 1956.

Rehearing Denied June 11, 1956.

W. J. Bragg, Memphis, and Sanders, Scott, Saunders & Smith, Amarillo, for appellant.

Hamilton & Deaver, Memphis, for appellee.

NORTHCUTT, Justice.

C. B. Robertson, plaintiff in the trial court and appellant here, brought suit against Mona Robertson, defendant in the trial court and appellee here, to recover certain damages caused by defendant's diversion of the natural flow of the surface water, and sought a mandatory injunction to have the defendant to remove a dike or levee constructed by her which plaintiff contended diverted water from its natural flow to the plaintiff's land.

Mrs. Ella Robertson, mother of C. B. Robertson and J. H. Robertson and other children, owned the section of land of which the land here in question is a part. On or about September 1, 1938, Mrs. Ella Robertson divided the section of land between her children. C. B. Robertson received 100 acres described as being the east 80 acres of the SW quarter and the west 20 acres of the SE quarter of the section. Mona Robertson is the surviving wife of J. H. Robertson, deceased, and owns the 240 acres of land being immediately north and northeast of plaintiff's 100 acres. It is immaterial just how Mona Robertson became the owner of all the 240 acres of land and, since the land of the other children is not involved in this suit they will not be mentioned further.

Plaintiff pleaded that shortly before Christmas 1953, Mona Robertson through her agents, servants and employees constructed a dike or levee in the mouth of the natural flow of the surface water on her land about 8 feet high and extended it a distance of approximately 1400 feet in a southwesterly direction down to the property line of plaintiff and then in a westerly direction along the north property line of the plaintiff for a distance of approximately 250 feet and thereby diverted the natural flow of the surface water onto and across the land of the plaintiff in excessive, unnatural and destructive quantities—and then pleaded certain damages.

Defendant answered and pleaded that when Mrs. Ella Robertson divided the land among her children that each of them had selected the tract conveyed to him; and at such time C. B. Robertson selected the 100 acres described in his petition, and received 20 acres more than his other brothers and sisters, other than Harless Robertson, and then agreed as a part of the consideration for his receiving 100 acres of land, instead of 80 acres as received by the other brothers and sisters, that he would take and receive the surface water without let or hindrance; and plaintiff having so agreed, and having so accepted and appropriated said consideration therefor was estopped to complain the defendant had caused any surface water to flow over said 100 acres in the exact manner as he then and there agreed to take and receive. Defendant then pleaded that continuously for more than twenty-five years prior to September 1, 1938, the date of the partition, the parents of the plaintiff, who owned the land, had placed a servitude on plaintiff's land to receive the surface waters from said adjacent and adjoining land, and that said servitude on said plaintiff's land as in use and was reasonably necessary for the fair enjoyment of the other adjacent and adjoining lands on September 1, 1938, when the division was so made; that by reason thereof a grant to the right to continue such use and servitude of plaintiff's said tract arises and exists by implication of law in favor of the owners of such other tracts. The defendant further pleaded she acquired an easement by prescription to use the course now traveled by the surface water over plaintiff's land and had for a period of more than ten years continuously, publicly and adversely used said course over plaintiff's land and had acquired an easement across said land. The defendant further pleaded certain acts of plaintiff causing his own damages and also unprecedented floods and then pleaded two and four years limitation.

By plaintiff's supplemental petition in reply to defendant's first amended answer he pleaded that the water from the present Mona Robertson tract of land had never run across plaintiff's land; that in 1931 an effort was made by John Robertson, the then owner of the land, to divert a portion of the water across the land now owned by the plaintiff, but that attempt was not successful, and that the water would not naturally run across plaintiff's land and did not run across it. Plaintiff then pleaded alternatively and in response to defendant's plea of prescription and easement, that the surface water had been running in a general course from northeast to southwest across defendant's land continuously and without interruption since prior to 1935; and that by reason of such fact plaintiff had acquired the right and easement to have the water continue in that course and away from plaintiff's land.

When this case was called for trial on September 20, 1955, at 1:30 p. m. the plaintiff made and presented to the court his first application for a postponement for a period of fifteen days. In plaintiff's motion for a postponement he alleged that he made known to the court that on September 16, 1955, he caused a subpoena to issue in this cause for one Dula Wiginton to appear before the court on September 19, 1955—that being the date on which the case was set for trial; that the sheriff's return on the subpoena revealed that Mr. Wiginton was served on September 19, 1955, at 8:25 a. m. which was one hour and thirty-five minutes before court convened; that on the call of the docket on September 19, 1955, there was one case set in front of this case for trial and that it went to trial before a jury and was completed on the morning of September 20, 1955; that Dula Wiginton resided in Hall County, Texas, and service was had upon him 15 miles southwest of Memphis, Texas, in Hall County at the time above alleged and that he was tendered the regular fee; that when the case was called he made known to the court that the sheriff reported that Mr. Wiginton would be unable to attend trial of the case because of illness and then alleged that Mr. Wiginton was in condition to give a deposition. Further stating in the motion for postponement that before making any announcement in the case the plaintiff

made the facts known to the court and made the statement that if counsel for the defendant would go take Mr. Wiginton's deposition that night that plaintiff would be ready for trial, and stated that it would be a short deposition. Attorneys for defendant refused to take the deposition that night and filed a controverting plea to the plaintiff's application for the fifteen days' postponement stating the case was filed on June 6, 1955, and the case was set for trial on July 27, 1955, for the 19th day of September 1955; that no diligence was shown in that the case being set down for trial a subpoena seasonably issued could and would have been served long prior to September 19, 1955, and that by diligence the deposition could have been taken if said witness was sick. Then alleged there was no other evidence other than hearsay evidence that Mr. Wiginton was sick or unable to attend court and as to whether the illness was temporary or permanent or that a postponement would secure the attendance of the witness.

■■■ The motion for postponement was overruled by the court and the case went to trial to a jury. Judgment was rendered upon the verdict of the jury denying the plaintiff any relief prayed for by him and ordered the plaintiff to pay all costs of the suit. Plaintiff made and presented his motion for a new trial and the same was overruled by the court, and from this judgment and order overruling the plaintiff's motion for new trial the plaintiff perfected this appeal.

By appellant's first assignment of error he complains of the action of the trial court in overruling the first motion for a temporary postponement for a period of fifteen days to permit the plaintiff time in which to take the deposition of Mr. Wiginton. The ground of such application was based upon the want of testimony. The appellant made and presented his affidavit that such testimony was material, showing the materiality of such evidences, and that he had used due diligence to procure such testimony, stating such diligence in that the witness was subpoenaed in Hall County, the county where the trial was had, and the county

where the witness resided, and that the sheriff serving such subpoena reported the witness could not appear as a witness because he was sick, and of the appellant's willingness to take the deposition of the witness on the evening of September 20, 1955; that the testimony could not be procured from any other source; stated the name and the residence of the witness Wiginton and what he expected to prove by him and also stated that the continuance was not sought for delay only but that justice may be done. Appellant complied with the requirements of rule 252 of Vernon's Annotated Texas Rules of Civil Procedure.

We are familiar with the fact that the granting or refusing of a continuance or a postponement ordinarily rests within the sound discretion of the trial court but that the exercise of such discretion is subject to review, especially when the above rule has been complied with. In considering whether the trial court abused its discretion in overruling the application for continuance or postponement for absence of material witness, the alleged facts to be related by the witness along with the testimony taken on the trial of the case must be considered. If the witness, Wiginton, would have testified to the things that appellant stated he would, we think the testimony would have been very material, and we must take it as true that he would have so testified. The appellee did not deny in his affidavit that Wiginton was sick. But, it is shown that appellee's attorneys refused to take Wiginton's deposition as requested by appellant's attorney. It is stated in the case of Houston Transp. Co. v. Paine, Tex.Civ.App., 193 S.W. 188, 190 (writ refused): "It appears from the motion that the witness Fayle was sick on the day the case was called for trial, and had advised defendants of that fact; therefore it may be said that defendants cannot be charged with the want of diligence in failing to have his testimony at the trial."

This cause of action was filed, according to the record, on June 6, 1955, and the motion for a fifteen day postponement was filed on September 20, 1955, and was appellant's first application for a postponement.

The subpoena for Mr. Wiginton was issued on September 16, 1955, and was served Monday morning at 8:25 a. m. the day before the motion for postponement was filed. It is stated in Galveston, H. & S. A. R. Co. v. Quilhot, Tex.Civ.App., 123 S.W. 200, 201 (no writ history): "Appellant used diligence to obtain the attendance of the witness, and it appears that it was appellant's first application for a continuance. The evidence was material, and the continuance should have been granted. The suit was instituted on November 5, 1908, about two months before the trial, and the witness being a resident of Seguin, and being there at the time, it was sufficient diligence to issue a summons for him on January 11, 1909, the day preceding the trial."

In the case of Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222, 225 (writ refused NRE) it is stated: "We think the application in question was substantially in compliance with the statute; as related above, it was properly verified as to diligence shown to procure the witness' attendance, cause of failure, name and residence of the witness, and what appellant expects to prove by him. The materiality of the witness' testimony, which was not controverted, must be considered as true. Thus, in ascertaining whether the trial court abused its discretion in overruling the application, the alleged facts along with the testimony taken on trial of the case must be considered. Ward v. Brown, Tex.Civ.App., 122 S.W.2d 684; Haley Fisheries, Inc., v. Payne, Tex.Civ. App., 48 S.W.2d 437; United Employers Casualty Co. v. McCloud, Tex.Civ.App., 146 S.W.2d 247; 9 Tex.Jur., p. 760, sec. 83. In so doing, there can be no question as to the materiality of the alleged absent witness' testimony, particularly so in light of the pleadings and evidence in reference to the issues of appellee's contributory negligence." To the same effect is the case of Piedmont Fire Ins. Co. v. Dunlap, Tex.Civ. App., 193 S.W.2d 853 (writ refused NRE). See also United Employers Casualty Co. v. McCloud, Tex.Civ.App., 146 S.W.2d 247. Appellant's first assignment of error is sustained.

By appellant's second point of error he contends that the trial court erred in ordering the witness, Rascoe Wiginton, to state his business during the ten year period from 1920 to 1930 and in ordering him arrested in the presence of the jury upon his refusal to do so. The record shows Rascoe Wiginton resided in Wellington from 1920 to 1930. Dula Wiginton was the witness that was sick and could not attend court. In order that it might be known and better understood just what took place on the trial we deem it advisable to copy the exact procedure had in the presence of the jury, which was as follows:

"Q. What did you do while you lived there in Wellington? A. Do I have to answer?

"Q. You don't have any objections, do you? A. Yes. I do.

"Q. Will you answer the question for the Jury? A. No, sir.

"Q. Is it something you are ashamed of? A. Yes, sir.

"Q. How long did you do something you were ashamed of? You were in Wellington all eight of them? A. No. I don't believe I will answer that either.

"Q. In fact, that is all you are going to answer, just what Counsel asked you to?

"Mr. Smith: No. That is not a fair statement, Your Honor.

"A. I don't know that that has anything to do with the case, as far as I am concerned.

"Mr. Smith: That thing he is talking about doesn't have anything to do with this case, and he has not said he will not answer any question connected with this land, if Your Honor please.

"Mr. Deaver: We ask that he be instructed to answer the question, Your Honor.

"Mr. Smith: I ask that he be not instructed to answer the question.

"Court: I rather think it would be proper that he answer the question, Mr. Smith.

"Mr. Smith: May I inquire what period that was?

"Mr. Deaver: I presume you heard the testimony, Albert.

"Mr. Smith: I wasn't paying close enough attention to the time.

"Mr. Deaver: It was when this witness lived in Wellington.

"Mr. Smith: What period time was that? That is what I want to ask. Do you mind telling me what period of time it was he lived in Wellington?

"Mr. Deaver: I understood him to say, Albert, it was after he got back from California.

"Mr. Smith: That would be what period of time, Mr. Wiginton?

"The Witness: I moved there in '20.

"Mr. Smith: In 1920 to Wellington?

"The Witness: Yes, sir.

"Mr. Smith: And, stayed there how long?

"The Witness: Ten years.

"Mr. Smith: You left there in 1930? Is that the period he is asking you about?

"The Witness: Yes, sir.

"Mr. Smith: I still say I don't care what it was, if Your Honor please, that he shouldn't be required to answer the question unless he cares to.

"Court: I believe it would be proper to answer the question.

"Mr. Smith: Let me see, Mr. Wiginton—

"The Witness: That is a part of my life my friends here don't know nothing about, and I am not going to tell it.

"Q. (By Mr. Deaver) Mr. Wiginton, without going any further, you heard the Court's ruling that you answer the question? A. That don't make any difference in my book. I am not going to answer.

"Q. You don't go according to the Court's order?

"Mr. Smith: That is not a fair question, Your Honor.

"A. I believe what the Court does —I believe in what the Court does and uphold the law and everything, but that is one thing I am not going to do, to answer that question.

"Q. That is as long as it applies to somebody else? A. As long as it applies to me personally, I am not going to answer.

"Q. You are going to openly and in the presence of the Jury, violate the Court's order that you answer the question? Is that right? A. I don't understand it.

"Q. I might not have understood you, but I understood you to say, that even though the Court had ordered you to answer the question, that you, Rascoe Wiginton, was still not going to answer it? Is that right?

"Mr. Smith: Your Honor, may I ask him a question myself?

"Mr. Deaver: I am not willing that the examination of this witness, at this point, be assumed by Counsel for the Plaintiff.

"Mr. Smith: I don't intend to ask him—

"Mr. Deaver: —He has developed—

"Mr. Smith: —I want to ask him, whisper to him what it was.

"Mr. Deaver: I am not agreeable to that.

"Court: I believe the question has been asked.

"Mr. Smith: All right, sir.

"Q. All right, will you answer it, Mr. Wiginton? A. No, sir.

"Mr. Deaver: No further question."

Redirect Examination

"By Mr. Smith: Q. Are you willing to answer any question that is asked you about this land in any way by him or anybody else? A. Yes, sir.

"Mr. Deaver: We object to that as being immaterial.

"A. I refuse to answer the question that was pertaining to my personal life and my own business, and that, I don't think, has anything to do with Court.

"Mr. Smith: That is all.

"Mr. Deaver: That is all.

"Court: Mr. Sheriff will you take charge of the witness.

"Mr. Smith: Your Honor, may I talk to the witness?

"Court: You will have time to talk with him when we get through with the case.

"Mr. Smith: May I talk to him outside of the Courtroom now?

"Court: No, sir. We are in the trial of a case.

"Mr. Smith: All right. May it please the Court, in connection with Mr. Wiginton's testimony, may I point out to the Court that this period involved was 1920—

"Mr. Deaver: —We ask that the Jury be retired.

"Mr. Smith: All right. That is fine, but I do want to point out some things.

"Court: All right. The Jury will retire, please."

After all of the above took place, the appellee had before the jury a more damaging effect than he would have had if testimony had produced that the witness spent the entire time from 1920 to 1930 in prison. Naturally, when a witness is in the witness chair and is being questioned he is at a disadvantage and the attorney has the advantage, and because of this advantage and the power of the trial courts the rights of the witness should be dealt with with kindness and consideration. We do not know what the witness, Rascoe Wiginton, was doing back during the time between 1920 to 1930. It could have been that his family was upon charity at that time and many other reasons that he was ashamed to acknowledge. Article 3717 of Vernon's Annotated Texas Civil Statutes provides, "No person shall be incompetent to testify in civil cases on account of his religious opinion, or for the want of any religious belief, or by reason of having been convicted of a felony." We do not know whether the witness Rascoe Wiginton was guilty of any kind of misconduct or what his reasons were for refusing to answer the question of the attorneys. We are of the opinion that when the trial court ordered the witness to answer the question that he should have done so. After the court had ordered the witness to answer the question, naturally the court had to inforce its ruling. We are of the opinion that error was brought about by the bantering of the witness. The question was asked the witness, "What did you do while you lived there in Wellington." Certainly if he had killed a man he could not be forced to tell it. Under this record we are unable to see where what he did twenty-five years ago would have any effect upon his testimony in this case and we think it was too remote, and think the court erred in ordering the witness to answer the question. Pool v. Sneed, Tex.Civ.App., 173 S.W.2d 768 (writ refused).

Appellant's second assignment of error is sustained.

The appellant's third point of error is that the court erred in submitting in the

disjunctive the question of whether or not the levee diverted the surface water. We think this is correct as to it being submitted erroneously but since there was no objection taken to the manner of its submission, we must overrule appellant's third point of error.

Since we are of the opinion this case should be reversed for a new trial; we will not discuss the other points raised by the appellant. Judgment of the trial court reversed and cause remanded.