EXPO CHEMICAL CO, INC., Appellant,

v.

Joan BROOKS, Appellee.

No. 17122.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 25, 1978.

Rehearing Denied June 22, 1978.

Gerald E. Hopkins, Houston, for appellant.

James E. Ross, Houston, for appellee.

COLEMAN, Chief Justice.

This is a trade secrets case involving a confidential customer list. The trial court refused a temporary injunction.

Joan Brooks, the defendant, was employed by Expo Chemical Co., Inc., the plaintiff, as a commissioned broker, buying and selling bulk and drum chemical products nationwide. While she was employed by another chemical broker she developed a list of some 200 potential customers and a set of product cross-reference cards for use with the customer list. After her employment with this broker terminated, Mr. Elton Dornbusch, president of the plaintiff firm, secured the customer list previously prepared by Joan Brooks and furnished her a copy of the list for use in his business. Mrs. Brooks was required to pay for the cost of copying the list.

During the period of her employment by Expo, Mrs. Brooks expanded the list and added additional information on the sheets with reference to certain firms with which they did business. In addition to the names and addresses of firms that used or sold bulk chemicals the more complete sheets contained the names of key purchasing agents, credit data, preferred or screened or single source customer, and pricing margins or arrangements. Most of this information was gathered by Mrs. Brooks, but Mr. Dornbusch also contributed information. Both Mrs. Brooks and Mr. Dornbusch testified that the list was considered confidential.

Before leaving the employment of Expo Chemical, Mrs. Brooks made copies of the customer list which she took with her together with either a copy or the original product cross-reference file. She secured employment with a firm engaged in buying and selling bulk chemicals and has used the materials which she took with her in actively soliciting business for her new employer.

■ An employee unless prohibited by contract may, upon termination of his employment, compete with his former employer and may do business with his former employer's customers, providing such competition is fairly and legally conducted. A former employee may freely use general knowledge, skills, and experience acquired during his employment, but he has a duty not to use or disclose, to the detriment of his former employer, trade secrets and other confidential information acquired in the course of his previous employment. See Annotation, Customer List As Trade Secret-Factors, 28 A.L.R.3d 7.

The Restatement of Torts, Sec. 757, states:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be . . . a list of customers . . ."

This section of the Restatement was quoted with approval by the Supreme Court of Texas in *Hyde Corporation v. Huffines*, 158 Tex. 566, 314 S.W.2d 763 (1958).

■ The owner of a business may protect a trade secret although he has no contract with his employees which prohibits divulging or using the confidential material. *Texas Shop Towel v. Haire*, 246 S.W.2d 482 (Tex.Civ.App.—San Antonio 1952, no writ).

■ In the absence of a covenant not to compete, "the law will imply as part of the contract of employment an agreement not to disclose information which the employee receives as an incident of his employment, if the employee knows that his employer desires such information kept secret, or if, under the circumstances, he should have realized that secrecy was desired." *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211, 213 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.).

■ In the area of confidential relationships between employers and employees, the injured party is not required to rely upon an express agreement to hold the trade secret in confidence. The basis for relief in such a case can be the wrongful disregard of a confidential relationship. *K*

& G Oil & Tool Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782 (1958).

The Supreme Court of Connecticut cited Section 757 of the Restatement of Torts as a source from which some of the factors to be considered in determining whether given information is a trade secret, including (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Town and Country House and Homes Service, Inc. v. Evans,* 150 Conn. 314, 189 A.2d 390 (1963).

In describing what a customer contact sheet is, Mrs. Brooks testified: "They contain the names of the companies, the addresses, the phone numbers, usually a person, a purchasing agent or sales manager, someone I knew and had spoken to there and on some occasions products they used, which information I got from usually books or from the people themselves, whatever." She testified that while she did not count the sheets she believed she prepared from 250 to 270 sheets while she was employed at Chellect Corporation, her former employer.

In describing the chemical cross-reference cards she stated: "When I first started in the chemical business, in this business, I had no knowledge of chemicals, so I went to a book called Merk Manual and I picked out certain chemicals with which the companies dealt and did research on them in Merk Manual. And then I researched the supplier of those chemicals through the Chemical Marketing Reporter and some other books of that type and I kept them in a cross file, and sometimes when I would talk to people and they did use this chemical I would jot down the name of the company on the same card." The cross-reference cards were supplied to her by Mr. Dornbusch, and she continued to develop them during the two years that she worked for Expo Chemical. While working at Expo Chemical she prepared approximately 250 to 270 new customer contact sheets. These sheets in some instances contained a chronological log of the call history, the products used, quantities purchased, specifications, locations and prices.

Mr. Dornbusch testified that it would be very difficult to operate as a chemical broker without the customer contact sheets and cross-reference cards. He stated that it would not be easy to replace the cross-reference cards because it would require a long period of time, a matter of years. Much of the information is not readily known although it can be developed but it takes time and effort. He stated that if one spent enough time he could develop the names of many potential customers for each chemical, but that considering the number of chemicals involved it would be almost impossible to do so except by noting actual purchases or sales. He said that 700 of the customer contact sheets were maintained and serviced by Mrs. Brooks. He testified that he usually got in touch with customers on the road and advised Mrs. Brooks. She would then do the actual purchasing and selling. No one outside of the company had access to the cards. Expo Chemical was a small company, employing Mr. Dornbusch, Mrs. Brooks, two full-time secretaries and one secretary part time. Mr. Dornbusch testified that it was necessary that Mrs. Brooks have access to the customer contact sheets and the cross-reference file in order to perform her duties.

Mr. Dornbusch testified that he had some customers which were "single source" customers. A single source customer is one who normally buys a particular chemical and looks to Expo Chemical alone as a source of his supply. He testified that he thought that Mrs. Brooks had contacted some of his single source customers.

Mr. Honea, who is employed by Prodyne, Inc., Mrs. Brooks' present employer, testified that he knew Mrs. Brooks brought to

her present employment certain cross-reference sheets and cards. He had seen the cross-reference cards on three occasions and knew they were originals because they were handwritten.

■ The customer lists and the cross-reference cards were considered to be confidential material by the employees using them. The materials have considerable value to Expo Chemical and would have essentially the same value to Prodyne, Inc. The information was developed over a long period of time and represented considerable work. It could not be easily and properly acquired or duplicated by others. While the various pieces of information which make up the customer lists are undoubtedly known to some members of the public, there is nothing in the evidence to indicate that such a customer list together with complete cross-reference cards is available in the industry. The fact that it was developed by Mrs. Brooks is of no consequence. The original list was secured from Prodyne by Mr. Dornbusch and made available to Mrs. Brooks for use in her employment with Expo Chemical. It was updated and enlarged by her in the course of her duties as an employee of Expo Chemical. The work product of the employee becomes an asset of the employer's business. *Empire Steam Laundry v. Lozier*, 165 Cal. 95, 130 P. 1180 (1913); *Morrison v. Woodbury*, 105 Kan. 617, 185 P. 735 (1919).

■ The trial court erred in refusing to require Mrs. Brooks to return to Expo Chemical all of the copies of the customer contact lists and the originals and all copies of the chemical cross-reference file, and in failing to enjoin her from making use of these materials in competition with Expo Chemical Company, Inc. *Crouch v. Swing Machinery Co.*, 468 S.W.2d 604 (Tex.Civ. App.—San Antonio 1971, no writ); *West v. Pennyrich International, Inc.*, 447 S.W.2d 771 (Tex.Civ.App.—Waco 1969, no writ); *Brown v. Fowler*, 316 S.W.2d 111 (Tex.Civ. App.—Ft. Worth 1958, writ ref'd n. r. e.).

■ The plaintiff has also attacked the action of the trial court in refusing to grant a continuance on written motion. The motion was correct in form and contained all the essential elements required by Rule 252, Texas Rules of Civil Procedure. The witness was expected to give testimony which would supply evidence that a certain corporation was a "single source" customer of the plaintiff's and that Mrs. Brooks had left with him the impression that she was working with Expo Chemical Company when in fact she was not employed by that company at the time. When we consider the facts admitted into evidence at the trial along with the allegations of the plaintiff's motion for continuance, we conclude that the trial court abused its discretion in overruling the application for continuance. This hearing on the application for temporary injunction was set some fourteen days after the filing of the petition. There was insufficient time to secure a deposition of the witness; the testimony expected to be procured related to a claim for relief which was not otherwise developed in the evidence, and, if believed, might well have supported injunctive relief. *Robertson v. Robertson*, 291 S.W.2d 452 (Tex.Civ.App.—Amarillo 1956, no writ).

Because of the errors to which attention has been called the case must be reversed. The plaintiff has prayed for injunctive relief in addition to the return of the materials discussed. Since the facts may be more fully developed on a retrial we express no opinion as to the extent of the relief to which the plaintiff may show himself entitled.

The judgment is reversed and the cause is remanded.