2019 PA Super 13

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 134 WDA 2017 |
| BEEMAC TRUCKING, LLC AND BEEMAC LOGISTICS, LLC | : : | |

Appeal from the Order December 22, 2016
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No.  11571-2016

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

OPINION BY OTT, J.:                                    **FILED JANUARY 11, 2019**

Pittsburgh Logistics Systems, Inc. (PLS) appeals from the order entered on December 22, 2016, in the Court of Common Pleas of Beaver County, that determined the contractual no-hire provision in the Motor Carriage Services Contract (MCSC) between PLS and BeeMac Trucking, LLC and BeeMac Logistics, LLC (BeeMac)[1] was unenforceable as a matter of law.  A panel of this Court previously affirmed the trial court decision.  PLS sought reargument before a court *en banc* on the issue of whether the trial court erred in denying a request for a preliminary injunction that sought to enforce a no-hire provision in a contract between PLS and BeeMac.  PLS's request was granted

---

[1] Although both BeeMac Trucking and BeeMac Logistics are in the caption, PLS's original appeal only involved the trucking concern.  Accordingly, herein, "BeeMac" refers only to BeeMac Trucking, LLC.

and substituted briefs were filed by both parties. The case was submitted to the *en banc* panel without oral argument. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

PLS is a third party logistics provider. Essentially, it is a facilitator between those who need items shipped and those who are shippers. In its Appellant's Brief, PLS has provided a hypothetical transaction demonstrating its business model.

- PLS will be retained by a potential shipper or existing customer to ship freight from its facility to certain specified locations;

- PLS's employee is well-trained to recognize the type of truck necessary for particular freight, and to know what "lane" the shipment must take to get to its destination;

- PLS's employee knows which reliable trucking companies can offer the needed transportation in the designated lane and under certain cost parameters;

- PLS arranges the shipment with the carrier.

PLS's Brief, at 9-10.

BeeMac is a shipping company that does non-exclusive business with PLS. As a non-exclusive shipper, BeeMac was required to enter into the MCSC with PLS. This contract is at the heart of the instant litigation. Paragraph 14.6 of the contract[2] is a no-hire provision that prohibits BeeMac from directly or indirectly hiring, soliciting for employment, inducing or attempting to induce, any employee of PLS or any of its affiliates to leave their employment

_____

[2] The contract will be quoted in relevant part later in this decision.

with PLS or the affiliate. This prohibition is ostensibly in place for the duration of the contract, which is self-renewing,[3] and for two years post-contract.

While the contract was still in force, four employees of PLS, Mary Colman, Racquel Pakutz, Michael Ceravolo,[4] and Natalia Hennings, left PLS and took employment with BeeMac.[5]

PLS filed suit against both BeeMac and PLS's former employees, seeking an injunction preventing BeeMac from employing any former employees and to prevent BeeMac from soliciting business directly from other entities that had done business with PLS. The trial court granted PLS relief in part, preventing BeeMac from soliciting other PLS customers for the two-year period established by the Motor Carriage Services Contract. However, the trial court refused to grant PLS the injunctive relief it sought regarding BeeMac's employment of the former PLS employees. PLS appealed.

With this background in place, we turn our attention to the substance of our review. Our standard of review for an order granting or denying a preliminary injunction is as follows:

---

[3] MCSC, ¶ 2.1, at 2.

[4] Michael Ceravolo has denied working for BeeMac. He claims to be employed by Hybrid Global Logistics Services, LLC. We need not resolve this issue.

[5] It is notable that PLS's contract with its employees also contained a provision that prevented them from working for any similar company anywhere in the world. *See PLS v. Ceravolo, et al*, 2017 WL 5451759 (11/14/2017) (unpublished memorandum). The trial court found this prohibition to be unenforceable as being overbroad, against public policy, and oppressive. That ruling has not been appealed herein.

We have emphasized that our review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential". *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995, 1000 (2003). This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* We will find that a trial court had "apparently reasonable grounds" for its denial of injunctive relief where the trial court has properly found "that any one of the following 'essential prerequisites' for a preliminary injunction is not satisfied." *Id.* at 1002.

There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest." *Id.* at 1002. The burden is on the party who requested preliminary injunctive relief[.]

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. Super. 2004) (footnotes omitted).

Upon review of the parties' arguments, the trial court determined that a no-hire provision such as the one between PLS and BeeMac has never been the subject of litigation in Pennsylvania in any reported case. Accordingly, the trial court looked to case law from other jurisdictions for guidance and followed

the logic of those jurisdictions that do not allow such provisions between companies. The trial court determined the no-hire provision would violate public policy by preventing persons from seeking employment with certain companies without receiving additional consideration for the prohibition, or even necessarily having any input regarding or knowledge of the restrictive provision. Additionally, the trial court reasoned the no-hire provision was overly broad in that the enforceable no-solicitation provision between PLS and BeeMac sufficiently protected PLS from the loss of its clients, which was the ultimate purpose of all the relevant restrictions. Based upon the nature and limitations of our review, we agree with the trial court.

Initially, we quote the relevant language from the MCSC:

14.3   The parties acknowledge that during the term of the Contract there may be disclosed to CARRIER [BeeMac Trucking, LLC] confidential information concerning PLS' operations including, but not limited to, the names and addresses of Shippers and others who are clients of PLS, volumes of traffic and rate data. During the term of this Contract and for a period of one year after termination of this Contract, CARRIER hereby agrees that it will not, either directly or indirectly, solicit any individual Shipper or other client of PLS, back-solicit and/or transport for itself, without the involvement of PLS, and freight that CARRIER handles pursuant to this Contract or freight which first becomes known to CARRIER as a result of CARRIER'S past, present or future dealings with PLS.[6]

…

---

[6] The trial court determined this restrictive clause was valid and enforceable. The enforceability of this clause was relevant to the trial court's subsequent invalidation of Paragraph 14.6.

- 5 -

14.6 CARRIER agrees that, during the term of this Contract and for a period two (2) years after the termination of this Contract, neither Carrier nor any of its employees, agents, independent contractors or other persons performing services for or on behalf of CARRIER in connection with CARRIER's obligations under this Contract will, directly or indirectly, hire, solicit for employment, induce or attempt to induce any employees of PLS or any of its Affiliates to leave their employment with PLS or any Affiliate for any reason.

MCSC, 8/30/2010, at 9-10.

The trial court set forth its reasoning regarding the restrictive provisions of the MCSC, as follows:[7]

> We now address the terms of the Motor Carrier [sic] Services Contract (Carrier Contract) between PLS and BeeMac Trucking. PLS is seeking an injunction with respect to two of the provisions of this contract, namely section 14.3, the non-solicitation of PLS customers, and section 14.6, the no-hiring of PLS employees. We will address each of these provisions.
>
> First, with respect to section 14.3 of the parties' Carrier Contract, we note that such restrictions on trade are not always favored by the courts. Indeed, the Pennsylvania Supreme Court acknowledged that "it has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged." *Jacobson & Co. v. Int'l Environ. Corp.*, 235 A.2d 612, 617 (Pa. 1967). However, certain restrictive covenants are valid if they are ancillary to the main purpose of the contract. *Id.* The covenant must be inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. *Id.* The main purpose of the contract must suggest the measure of protection needed, and furnish a sufficiently uniform standard by which the validity of such a restraint may be judicially determined. *Id.* We believe that the

---

[7] The entire reasoning of the trial court, including its discussion of the contractual provisions the trial court endorsed, is useful to provide the context for the trial court's decision regarding the no-hire provision.

restrictive covenant in section 14.3 of the Carrie[]r Contract meets these requirements; it was ancillary to the main purpose of the agreement and was necessary to protect PLS's interest in its customers.

In the instant case, the covenant contained in section 14.3 furthered PLS's legitimate interest in preventing BeeMac from cutting PLS out of the equation. Courts have held that a business's customers are a protectable interest. *See Sidco Paper Co. v. Aaron,* 351 A.2d 250, 254, 257 (Pa. 1976) (holding that "Sidco clearly has a protectable interest in customer goodwill" and "properly used a restrictive covenant to protect its customer relationships"); *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 112-[1]14 (3d. Cir. 2010) (noting that Pennsylvania law protects non-technical trade secrets).

PLS offered evidence that the customers listed on Exhibits N and 12 were its customers, by showing receipts for shipments made. BeeMac could not establish similar, prior, direct dealings with these clients. As such, we will uphold the provisions of section 14.3, and allow the injunction to [sic] prohibiting BeeMac from soliciting these customers for one year to remain in effect.

Turning to section 14.6 of the Carrier Contract, which prohibits BeeMac from hiring former employees of PLS for a period of two years following the termination of the Carrier Contract, we believe that provision constitutes an unfair restraint on trade. We believe this no-hire provision exceeds the necessary protection PLS needs to secure its business, and is void as a matter of public policy.

Pennsylvania courts have addressed the appropriateness of non-compete clauses between employers and employees, but there is no case law in Pennsylvania on the issue of no-hire restrictive covenants between contracting companies. Some states have held that these types of agreements are void against public policy. *See, e[.]g[.] Heyde Cos. v. Dove Healthcare, LLC*, 654 N.W.2d 830 (Wis. 2002); *and see VL Sys., Inc. v. Unisen, Inc.*, 61 Cal. Rptr. 3d 818 (Cal. Ct. App. 2007). Other states have held that these provisions are a permissible partial restraint of trade, and are thus not void against public policy. *See, e[.]g[.] Ex parte Howell Eng'g & Surveying*, 981 So.2d 413 (Ala. 2006); *and see H & M Commercial Driver Leasing,*

*Inc. v. Fox Valley Containers, Inc.*, 805 N.E.2d 1177 (Ill. 2004).

> We believe these types of no-hire contracts should be void against public policy because they essentially force a non-compete agreement on employees of companies without their consent, or even knowledge, in some cases. We believe that if an employer wishes to limit its employees from future competition, this matter should be addressed directly between the employer and the employee, not between competing businesses. Moreover, in this case, such a restriction goes beyond the protected interest of PLS, which is its customers. So long as the former employee, or any employee of BeeMac, does not contact former customers of PLS, for the time period in the contract, in this case one year under section 14.3 of the Carrier Contract, there is no need to enforce the no-hire provision contained in section 14.6. For these reasons, we do not believe PLS has a substantial likelihood of success on the merits of its claim under section 14.6, and we will vacate the injunction prohibiting BeeMac Trucking from hiring former PLS employees.

Trial Court Opinion, 12/22/2016, at 11-14.

The trial court supported its decision by examining various decisions from other jurisdictions and concluding the reasoning of those cases that disfavor such restrictions better represents the current state of Pennsylvania law. Our duty in reviewing the trial court's decision is to determine whether that decision is based upon "any apparently reasonable grounds." *Warehime*, *supra*. We have reviewed the certified record, the submissions by the parties, relevant law and find that the trial court's decision is, in fact, based upon reasonable grounds.

In *Heyde*, *supra*, cited by the trial court, the restrictive covenant between companies was unenforceable because there was no proof that the employee knew of the clause and there was no similar clause in the employee's

work contract. Here, there is no proof that the employees knew of the clause between the companies. While there was a restrictive covenant in the employees' contracts with PLS, the trial court determined it was unenforceable as being oppressive or an attempt to foster a monopoly, thereby demonstrating unclean hands on the part of PLS. **See** Trial Court Opinion, 12/22/206 at 7. **See also**, **PLS v. Ceravolo**, **supra**, affirming the trial court, and footnote 5, **supra**. It would be incongruous to strike the employees' restrictive covenant, finding PLS to have had unclean hands, yet allow PLS to achieve the same result via the contract between companies. In **VL Systems**, **supra**, also cited by the trial court, the California court found the restrictive clause between companies to be overbroad, applying to any VL Systems employee regardless of that person's contact with the other company, as well as against the policy of favoring employee mobility. The clause at issue herein is similarly overbroad, preventing any PLS employee from working for any PLS client.

Additionally, the essence of the trial court's sound decision is summed up in **Richards Energy Compression, LLC v. Dick Glover, Inc.**, 2013 WL 12147626, USDC New Mexico, memorandum, 9/16/2013,[8] which quoted two published decisions from Texas and Wisconsin.

---

[8] We are aware that this case, as both a Federal and memorandum decision, is not binding. However, we quote the succinct analysis of the previously published decision of **Haire** and **Heyde**. As such, this case provides an instructive single source.

This Court finds the Court of Civil Appeals case of **Texas Shop Towel v. Haire**, 246 S.W.2d 482, 484 (Tex. Civ. App. – San Antonio 1952) especially instructive. In **Haire**, the buyer of a business brought claims against the seller for breach of the non-compete agreement the parties had negotiated as part of the sale of the business. **Id.**, at 483. The non-compete agreement executed by the seller specifically provided that the owner (seller) and all of the companies' employees would not participate in a competing business for a number of years. **Id.** At trial, the jury found that the seller had not breached the non-compete agreement and found in the seller's favor. **Id.** The buyer asked the Court to grant a judgment notwithstanding the verdict; the trial court denied that motion. **Id.** The buyer appealed the trial court's ruling. **Id.**, at 484.

The Court of Appeals upheld the trial court's ruling. **Id.** The Court of Appeals noted that the only possible method of relief for the buyer was to find that all of the seller's employees were bound by the non-compete agreement. The Court noted "in a contract restricting trade, we do not think that an employee's individual right and freedom to contract may be traded away by a third person, even by the third party's express contract." **Id.**, at 485. "It is one thing for an employee voluntarily to surrender his known rights; it is vastly different when an employee is placed under servitude by a contract to which he is not a party and about which he may know nothing." **Id.** Even though the contract specifically stated that it was to apply to employees of the seller, the Court of Appeals refused to hold the employee accountable to the terms of the non-compete agreement, because the employee was not a party to that agreement. Other courts have relied on the reasoning in **Haire**. **See e.g. Heyde Companies, Inc. v. Dove Healthcare, LLC**, 2001 WI 278, 249 Wis. 2d 32, 39, 637 N.W.2d 437, 440 **aff'd.** 2002 WI 131, 258 Wis. 2d 28, 654 N.W.2d 830 ("We agree with the reasoning in [**Haire**]. It is one thing to uphold the restriction on an employee's freedom where it results from an agreement freely entered into by the employee. But where the restriction on an employee's freedom results from the employer's agreement with another [ ], the employee is deprived of his or her freedom without acquiescence and with no resulting benefit.").

**Richards Energy v. Glover**, at *3.

This reasoning aligns with the trial court's determination that Paragraph 14.6 violated public policy by preventing non-signatories, PLS employees, from exploring alternate work opportunities in a similar business.  An example of how such covenants can produce harm is demonstrated by the following application of Paragraph 14.6.  The PLS MCSC ostensibly prevents BeeMac from hiring any PLS employee for the term of the agreement, which is self-renewing,[9] and for an additional two years thereafter.  Accordingly, each MCSC contract with a new carrier, results in a new restriction upon current employees from obtaining employment in the same or similar field of work.  Employment restrictions are valid, in certain circumstances, in contracts between employer and employee.[10]  As a general rule, those restrictions are in place, in an agreement between the employer and employee, at the time of initial employment.  When a new restriction is added, to be enforceable, that restriction must be supported by additional consideration.  **See generally**, **Insulation Corp. of America v. Brobston**, 667 A.2d 729 (Pa. Super. 1995); **Modern Laundry & Dry Cleaning Co. v. Farrer**, 536 A.2d 409 (Pa. Super. 1988).  If additional restrictions to the agreement between employer and employee are rendered unenforceable by a lack of additional

---

[9] MCSC ¶ 2.1.

[10] We note, again, that PLS's employment restrictions with its employees were also found to be unenforceable.  That aspect of the related decision was not raised before this *en banc* panel.

consideration, PLS should not be entitled to circumvent that outcome through an agreement with a third party.

Finally, the caselaw that supports such inter-company employment provisions generally uphold narrowly tailored restrictions. For example, in ***H & M Commercial Driver Leasing v. Fox Valley Containers, Inc., supra***, the provision at issue prevented Fox Valley from hiring only those drivers who had been supplied to Fox Valley by H & M. It did not prevent Fox Valley from hiring any other driver who was working for H & M. Here, Paragraph 14.6 prevents BeeMac, or any agent or independent contractor of BeeMac who is involved with providing services related to PLS, from hiring any PLS employee. By the plain reading of the language of this restrictive provision, it was meant to have effect in the broadest possible terms. This fact, coupled with the trial court's finding that Paragraph 14.6 was largely superfluous in light of the enforceable non-solicitation clause, further supports our determination that the trial court's decision was based upon reasonable grounds.

The scope of our review for a preliminary injunction is to determine if the trial court's ruling regarding injunctive relief had a sound basis. Our review and analysis demonstrates the trial court's ruling in this matter is

reasonably based. **See *Warehime***, ***supra***. Accordingly, we affirm the order of December 22, 2016 as it applied to the MCSC between PLS and BeeMac.[11]

Order affirmed.

President Judge Gantman, President Judge Emeritus Bender, Judges Panella, Lazarus, Stabile and Dubow join the Opinion.

Judge Bowes files a Dissenting Opinion in which Judge Murray joins.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/2019

---

[11] We acknowledge the possibility that the passage of time during the pendency of this appeal may have rendered our decision moot. However, neither of the parties have raised that concern.