## THE STATE EX REL. HASWELL VS. CRAM.

The county of *Buffalo* was organized July 6, 1853 (Laws 1853, chap. 100) with an area of *less* than nine hundred square miles; on the 24th of January, 1854, (Laws 1854, chap. 1) several townships were set off from Chippewa county, it containing at that time an area of *more* than nine hundred square miles, and added to *Buffalo* county, by which its area was made to *exceed* nine hundred square miles; three days afterward, and at the same session of the legislature, the county of *Trempeleau* was created, (Laws 1854, chap. 2) from a part of the county as thus enlarged, being a part of that county as it was originally organized, and parts of other adjacent counties, thereby leaving *Buffalo* county with an area of *less* than nine hundred square miles; both of the acts of 1854 were pending before the legislature at the same time, and the question of such division of *Buffalo* county was not submitted to a vote of its electors. *Held*, that said chapters 1 and 2, Laws of 1854, and such division of *Buffalo* county were valid and not in violation of § 7, Art. 13 of the Constitution, notwithstanding the legislature may have increased the area of *Buffalo* county for the express purpose of dividing it as they did, and the true inquiry in such case is, whether at the time of passing the latter act, dividing the county of *Buffalo*, the legislature had the power to pass it.

A county containing an area of *less* than nine hundred square miles, may have territory adjacent thereto, taken from another county having an area of *more* than nine hundred square miles and attached to it by act of the legislature, and if when so enlarged, it contains an area of *more* than nine hundred square miles, the legislature may divide it and attach a portion of the territory of which it was *originally* constituted, to another county, or with such portion and parts of adjacent counties, create a new county, leaving the county so divided, with an area of *less* than nine hundred square miles, without submitting the question of such division to a vote of its people.

The general rule is, that in determining whether an act of the legislature is in violation of the constitution, the end accomplished, and not the means used, is to be considered, and the restraints of the constitution cannot be avoided by indirection.

It was not the design of § 7, art. 13, of the constitution, that in case of adjoining 'counties, the area of each of which *exceeds* nine hundred square miles, the power of the legislature should be restricted, so that territory might not be taken from one and added to another, or made to form a part of a new county, without submitting the question of such division to a vote of the people of the county divided.

The validity of an act of the legislature cannot be made to depend on the motives of its framers.

The doctrine that statutes *in pari materia* are to be construed together and as one act, is a rule of construction resorted to in cases of doubt, and is not applicable where the statute to be construed, is plain and unambiguous.

ACTION OF QUO WARRANTO against the Sheriff of *Trempeleau* County.

The complaint alleged that the respondent, for the space of one day and upwards, had held, used and exercised the office of sheriff in certain towns, claimed in the complaint to belong to and form a part of *Buffalo* county, without any legal election, appointment or authority whatever, and that Andrew Heinrich was then sheriff of Buffalo county, and authorized to use and exercise the said office in said towns, and prayed for the appropriate judgment in such cases.

The answer set up matters in defense, which are sufficiently stated in the opinion of the court, and the relator demurred thereto.

*M. H. Orton & J. C. Ford*, for relator.

*Geo. Gale*, for respondent.

*By the Court*, DIXON, C. J.    By act approved July 6, 1853, (Laws 1853, chap. 100,) the legislature organized the county of Buffalo, with an area of *less* than nine hundred square miles. At the next session, January 24th, 1854, (Laws 1854, chap. 1,) several townships were set off from Chippewa, an adjoining county of *more* than nine hundred square miles in extent, and attached to the county of *Buffalo*. After such annexation, the area of *Buffalo* exceeded nine hundred square miles. At the same session (Laws 1854, chap. 2,) the county of *Trempeleau* was created from part of the county of *Buffalo*, thus enlarged, and adjacent counties, again leaving *Buffalo* with an area of less than nine hundred square miles, but with different boundaries and of different territory from that out of which it was originally organized.    Both the latter acts were pending before the legislature at the same time, and approved, the last three days after the first, namely on the 24th day of January, 1854. Neither act was submitted to a vote of the people of *Buffalo* county.    The question presented involves the validity of these acts, whether it was competent for the legislature thus to sever

the county of *Buffalo*, as originally constituted, and to cause a part of it to be formed into the county of *Trempeleau*, without submitting the question to a vote of the people. The constitution, sec. 7, art. 13, declares, "no county with an area of nine hundred square miles, or less, shall be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all legal voters of the county, voting on the question, shall vote for the same." The argument is, that as the legislature before attaching the townships from *Chippewa*, had no power to divide the county of *Buffalo* without submitting the question to a vote of the people, they had none after, because they cannot make that lawful by two acts, which would have been void if done by one, that they cannot walk round the barriers set up by the constitution in the way of their power. The principle is not denied, but its applicability is. There is no doubt of the general truth, that in questions of this nature, the means are not to be regarded, but only the end, and that the restraints of the fundamental law cannot be avoided by indirection. But I think the present case constitutes an exception; that the legislature may, so to speak, confer upon themselves the power to divide a county where if they had attempted it directly, the act would have been void. And I think it no violation of the constitution, certainly not of the letter, and I do not, of the spirit. At all events I doubt whether their ac-action could in any case be the subject of judicial revision. It seems to me when properly understood, that the provision under consideration was never intended to apply to those newly settled portions of the state where new counties were to be erected and where it was obvious that in the progress of settlement and the growth of population and business, changes in the boundaries of counties already established would sometimes be absolutely required; that it was not the design in any case of adjoining counties either of which exceeded the constitutional limits, to restrict the legislative power so that terri-

tory might not be taken from one and added to another, making either divisible at the pleasure of the legislature. In the progress of division, and in the older and more densely populated districts it was doubtless supposed, as the fact is, that for convenience in the transaction of business, few counties would remain with an area exceeding that named in the constitution, and where they did not and there was no adjoining territory which the legislature might constitutionally annex, then the power to divide without submitting the question to a vote of the people should cease.

This view, it seems to me, is the only one that can be maintained consistently with the acknowledged power of the legislature to enlarge counties, whenever the adjoining territory is not within the restriction of the constitution. This power is not denied. It is conceded the act of January 24th of itself was open to no constitutional objection and if the legislature had stopped there, the townships annexed from *Chippewa* became lawfully a part of the county of *Buffalo*. If this be so, and there can be no doubt of it, how, I ask, could the subsequent enactment of another law, not inconsistent or conflicting, arrest its constitutional operation and destroy its validity? If effectual, it became so from the moment of its passage and publication, and for three days at least, intervening before the passage of the last act, the added townships constituted part of *Buffalo* county · for the contingency upon which the court is asked to declare it void, had not happened. The last act was not passed and might never be. If the legislature had waited three years instead of three days before dividing *Buffalo* or creating the new county of *Chippewa*, or if they had postponed it until the next session, it is not probable, upon the theory advanced by the counsel, that any question would ever have been made as to either act. But now it is insisted, that neither can stand, and that *Buffalo* county remains as originally organized. The turning point in the minds of counsel seems to be, that both acts received the sanction of the same legislative body, and taken together

evince an intention of the part of the individual members favoring their passage, to evade the restriction of the constitution. In other words, the validity of the acts is made to depend on the motives of the framers. If these were proper, if the voting majority had no sinister purpose of evasion, the acts must stand, but otherwise they must fall—a principle of adjudication which has been often repudiated and never once sustained.

Now does the doctrine, that statutes *in pari materia* are to be taken together and construed as one act, affect the question. It is a rule of construction resorted to in cases of doubt and is never applicable where the statute is plain and unambiguous. Sedgwick on Statutory Law, 231, 247. The acts in question are of the latter character. No doubt arises upon the face of either, and it would seem to be a perversion of the rule to apply it for the purpose of defeating the will of the legislature so plainly expressed. Besides, if I am correct in the view I have taken of the constitution, the motives which led to the passage of the acts are wholly immaterial.

Having the power arbitrarily to enlarge the county, the legislature might do so for the express purpose of enabling them to divide it, and when it was enlarged their power to divide it became equally insuperable and supreme. The true inquiry is, had the legislature power *at the time of its passage* to enact the law in question? If they had, it is valid. Being a question of mere power, the court can look neither forward nor backward, nor canvass motives for cause of impeachment.

Demurrer overruled.