HEYDE COMPANIES, INC., d/b/a Greenbriar Rehabilitation, Plaintiff-Respondent,†

v.

DOVE HEALTHCARE, LLC, d/b/a Dove Healthcare at Eau Claire, a Wisconsin Limited Liability Company, Defendant-Appellant.

Court of Appeals

*No. 01–0863–FT. Submitted on briefs August 24, 2001.— Decided October 23, 2001.*

2001 WI App 278

(Also reported in 637 N.W.2d 437.)

---

† Petition to review granted 1-29-02.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Carol S. Dittmar* of *Garvey, Anderson, Johnson, Geraci & Mirr, S.C.*, Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John F. Maloney, Robert K. Bultman* and *Jennine T. Sonntag* of *McNally, Maloney & Peterson, S.C.*, Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Dove Healthcare, LLC, appeals a judgment awarding damages and costs in the amount of $64,314.43 to Heyde Companies, Inc., for breach of a no-hire contract provision. Dove is a health care provider that operates nursing homes. Heyde Companies owns Greenbriar, which furnishes physical therapists to nursing homes. Dove argues that the trial court erred by determining that the no-hire provision was enforceable. Dove contends that the no-hire provision was an unreasonable restraint of free trade because Greenbriar's employees had no knowledge of the provision and had not signed any covenants not to compete. We agree and reverse the judgment.

## BACKGROUND

¶ 2. Dove and Greenbriar entered into a Therapy Services Agreement in 1997. Greenbriar had similar agreements with other nursing homes in the area. Under the agreement, Greenbriar provided Dove with physical therapists. The therapists worked in Dove's nursing home, but remained Greenbriar employees. The therapists were at-will employees.

¶ 3. The agreement contained a provision that prevented Dove from hiring any Greenbriar therapists

for up to one year after the agreement expired unless Dove obtained Greenbriar's written consent.[1] If Greenbriar gave consent, Dove was required to pay Greenbriar a fee of fifty percent of the therapist's annual salary. Greenbriar therapists were unaware of the provision.

¶ 4. Dove terminated the agreement with Greenbriar on October 26, 1999, to be effective on December 31, 1999. Shortly after terminating the agreement, Dove hired one current and three former Greenbriar therapists. Dove did not seek Greenbriar's consent, nor did Dove pay the fifty-percent contractual fee.

¶ 5. Greenbriar filed an action against Dove alleging breach of the no-hire provision and seeking payment of the fifty-percent contractual fee for each employee. Dove moved for summary judgment arguing that the no-hire provision was unenforceable. The court denied the motion. Dove and Greenbriar then stipulated to the facts on the issue of liability and presented evidence on the issue of damages. The court found that Dove was liable to Greenbriar for $62,124.40 in damages. This appeal followed.

---

[1] The no-hire provision states:

[Dove] acknowledges and agrees that it will not, directly or indirectly, solicit, engage, permit to be engaged or hire any Greenbriar therapists or therapist assistants to provide services for [Dove] independently, as an employee of [Dove] or as an employee of a services provider other than Greenbriar or otherwise during the term of this Agreement (including any renewals thereof) and for a period of one (1) year thereafter without the prior written consent of Greenbriar. If, after prior written consent by Greenbriar, any Greenbriar therapists or therapist assistants are hired or utilized by [Dove], [Dove] shall pay Greenbriar a fee of fifty percent (50%) of the subject Greenbriar employee's annual salary. Payment of said fee shall be made by [Dove] directly to Greenbriar upon employee's termination from Greenbriar.

## STANDARD OF REVIEW

¶ 6. In reviewing the trial court's findings and conclusions, we apply the following standards of review. We will not disturb the trial court's findings of fact unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2). Conclusions of law will be reviewed independently. *Tourtillott v. Ormson Corp.*, 190 Wis. 2d 291, 294–95, 526 N.W.2d 515 (Ct. App. 1994).

## DISCUSSION

¶ 7. The issue on appeal is whether the no-hire provision is unenforceable. Dove argues that the provision was, in effect, a covenant not to compete that affected the rights of Greenbriar's therapists to seek employment. Dove contends that the no-hire provision was unenforceable without the knowledge and consent of the therapists. Because the therapists were unaware of the no-hire provision, Dove contends that the trial court erred by holding that the no-hire provision was enforceable and awarding damages in Greenbriar's favor.[2]

¶ 8. Wisconsin law favors the mobility of workers. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 214, 267 N.W.2d 242 (1978). As a result, employ-

---

[2] Additionally, Dove argues that it did not violate the no-hire provision and that the liquidated damages provision in the agreement constitutes an unenforceable penalty. Because our resolution of the enforceability of the no-hire provision is dispositive of the appeal, we do not address these arguments. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

ment contracts that operate to restrict trade or competition are suspect in this state, and will be liberally construed in favor of employees. *Wausau Med. Ctr. v. Asplund*, 182 Wis. 2d 274, 281, 514 N.W.2d 34 (Ct. App. 1994); WIS. STAT. § 103.465. Contracts that are contrary to public policy are unenforceable. *NSP v. National Gas Co.*, 2000 WI App 30, ¶ 8, 232 Wis. 2d 541, 606 N.W.2d 613.

¶ 9. According to Dove, Wisconsin's public policy favors unrestrained competition in the employment market, and the no-hire provision in this case constitutes the most basic type of trade restraint. Dove bases its argument on WIS. STAT. §§ 103.465 and 133.03(1).[3]

¶ 10. WISCONSIN STAT. § 103.465 permits covenants in employment contracts that restrict departing employees' ability to work for competitors of their former employer within a specified territory and for a specified

---

[3] WISCONSIN STAT. § 103.465 reads as follows:

A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

WISCONSIN STAT. § 133.03(1) reads as follows:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, may be fined not more than $50,000 or imprisoned for not more than 7 years and 6 months or both.

time period as long as such restrictions are reasonably necessary for the former employer's protection. However, covenants that impose unreasonable restraints are illegal. *See* WIS. STAT. § 103.465. The clear public policy manifested by § 103.465 is to protect the employee from unreasonably restrictive covenants. *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 115, 579 N.W.2d 217 (1998).

¶ 11. In addition, WIS. STAT. § 133.03(1) provides that "Every contract . . . in restraint of trade or commerce is illegal." *See Journal Co. v. Bundy*, 254 Wis. 390, 395, 37 N.W.2d 89 (1949).

¶ 12. We conclude that the no-hire provision violates public policy by restraining trade in the labor market and is thus unenforceable. Although the provision purports to restrict only the parties to the contract and is not a restrictive covenant as that term is usually used, its most severe effect is on Greenbriar therapists who are restricted by the provision.

¶ 13. The no-hire provision violates public policy by restricting Greenbriar therapists the right to freely sell their skills in the labor market. Without signing any agreement or even being given notice, a portion of the available labor market has been taken away. Not only are the therapists restricted from working for Dove, but with thirty-three other health care facilities that have contracted with Greenbriar. Thus, current and former Greenbriar therapists are restricted from being employed by these facilities, unless Greenbriar gives consent and unless the facilities are willing to pay the fee.

¶ 14. While Wisconsin courts have not addressed the validity of this type of no-hire provision, several cases from other jurisdictions have addressed similar agreements. In *Communication Technical Sys. v. Dens-*

*more*, 583 N.W.2d 125 (S.D. 1998), the South Dakota Supreme Court recognized the inequity involved when an at-will employer tries to enforce a no-hire agreement with another employer. The court observed that the at-will employer seeks the best of both worlds. *Id.* at 129. The employer wants to retain the right to hire or fire an employee for any reason, but if that employee then tries to seek alternative employment, certain employers are considered "forbidden fruit" without the employee ever agreeing to such a limitation. *Id.*

¶ 15. In *Texas Shop Towel v. Haire*, 246 S.W.2d 482, 484 (Tex. Civ. App. 1952), the court noted that an employer could not bind its employees by contract with a third party, because the employer's rights to contract cannot eliminate the employee's own rights as a free contracting person. The court stated that "[i]t is one thing for an employee voluntarily to surrender his known rights; it is vastly different when an employee is placed under servitude by a contract to which he is not a party and about which he may know nothing." *Id.*

¶ 16. We agree with the reasoning in *Densmore* and *Haire*. It is one thing to uphold the restriction on an employee's freedom where it results from an agreement freely entered into by the employee. But where the restriction on an employee's freedom results from the employer's agreement with another potential employer, the employee is deprived of his or her freedom without acquiescence and with no resulting benefit.

¶ 17. Here, the no-hire provision restricts Greenbriar therapists from gaining employment with Dove. The only way the therapists can gain employment at Dove is if Greenbriar consents and Dove pays Greenbriar a fee.

¶ 18. Additionally, Greenbriar requires other area facilities like Dove to enter into the same no-hire

agreement. Greenbriar therapists are restricted from gaining employment at these facilities as well. Therefore, the no-hire provision restricts the therapists from contracting for employment with a portion of the available labor market.

¶ 19. Greenbriar argues that this is simply a breach of contract case. Greenbriar contends that the no-hire provision only restricts Dove, not Greenbriar therapists. Greenbriar further contends that WIS. STAT. § 103.465 is not applicable because the statute only regulates restrictive covenants between employers and employees, not contractual agreements between two business entities.

¶ 20. While, as indicated above, the no-hire provision is not a restrictive covenant on its face, we conclude that the provision violates public policy as expressed in WIS. STAT. § 103.465. The provision purports to only restrict Dove. However, its effect limits the employment opportunities of Greenbriar therapists without their knowledge or consent. The therapists' right to freely contract is hindered when seeking employment with employers that have entered into no-hire agreements with Greenbriar.

¶ 21. Greenbriar is trying to do indirectly what it cannot do directly. It cannot enforce restrictive covenants unless its employees agree to the covenants and unless the covenants are reasonable under WIS. STAT. § 103.465. Here, Greenbriar is attempting to avoid the statute by entering into an agreement with another employer to restrict its employees. The provision is in effect a restrictive covenant.

■

¶ 22. Greenbriar also argues that WIS. STAT. § 133.03(1) is inapplicable to the no-hire provision because it applies only to monopolies and Greenbriar

does not control the market for therapists. However, the language of the statute is broader. The statute applies to "every contract . . . in restraint of trade. Unreasonable restraints on trade are prohibited. *Independent Milk Producers Co-op v. Stoffel*, 102 Wis. 2d 1, 12, 298 N.W.2d 102 (Ct. App. 1980). The public policy behind the statute operates along with Wis. Stat. § 103.465 to prevent restrictive covenants that unreasonably restrain trade. As we have stated, the no-hire provision operates as a restrictive covenant. For reasons discussed, it unreasonably restrains the therapists' opportunities to seek employment.

¶ 23. Finally, Greenbriar argues that the cases Dove cites are distinguishable and that other jurisdictions have enforced similar no-hire provisions.

¶ 24. Greenbriar cites *Webb v. West Side Dist. Hosp.*, 144 Cal.App.3d 946 (1983), to support its argument. In *Webb*, a doctor contracted with a hospital to place physicians in the hospital's emergency room. The contract contained a no-hire provision restricting the hospital from hiring any physician provided by the doctor who had actually worked at the hospital unless the hospital paid a fee to the doctor.

¶ 25. *Webb* upheld the no-hire provision because it only prohibited the hospital from hiring physicians who had actually worked at the hospital. *See id.* at 954 n.5. The provision did not go beyond what was necessary to protect the doctor's economic interest in preventing the physicians from "stealing" the hospital as a customer. *Id.*

¶ 26. *Webb* relied on *Hospital Consultants v. Potyka*, 531 S.W.2d 657 (Tex. App. 1975), to support its holding. *Potyka* reasoned that a doctor who provided emergency room physicians to a hospital had a legitimate interest in preventing the physicians from steal-

41

ing the hospital as a customer. The doctor could restrict the physicians by prohibiting the hospital from hiring physicians who had actually worked at the hospital. *Webb*, 144 Cal.App.3d at 954 n.5.

¶ 27. However, unlike *Webb*, where the no-hire provision was found valid, *Potyka* held that the no-hire provision between the doctor and the hospital was unenforceable for two reasons. First, the court found it unacceptable that the physicians, whose employment was being restrained, were unaware of the contractual provision restricting them. *Potyka*, 531 S.W.2d at 664. Second, the provision was unlawfully restrictive because it prohibited the hospital from hiring all physicians hired by the doctor regardless whether the physicians had ever worked at the hospital. *Id.* at 665.

¶ 28. The present case is more in line with *Potyka* than with *Webb.* Here, none of the physical therapists knew their employment was restricted because of their employment at Greenbriar. Further, the no-hire provision was not limited to therapists who worked at Dove. Dove was prohibited from hiring any Greenbriar therapist even if that therapist had never worked at Dove. Thus, the provision went beyond what was reasonably necessary to protect Greenbriar's interests in violation of the public policy behind WIS. STAT. §§ 103.465 and 133.03(1).

¶ 29. We conclude that an employee's individual right and freedom to contract may not be restricted by a contract between two employers unless the employee is aware of and consents to the contract. Because the no-hire provision restricted the employment opportunities of Greenbriar employees without their knowledge or consent, we conclude that it is unenforceable.

*By the Court.*—Judgment reversed.