HEYDE COMPANIES, INC., d/b/a Greenbriar Rehabilitation, Plaintiff-Respondent-Petitioner,

v.

DOVE HEALTHCARE, LLC, d/b/a Dove Healthcare at Eau Claire, a Wisconsin Limited Liability Company, Defendant-Appellant.

Supreme Court

*No. 01–0863–FT. Oral argument September 10, 2002.—Decided December 27, 2002.*

2002 WI 131

(Also reported in 654 N.W.2d 830.)

For the plaintiff-respondent-petitioner, there were briefs by *John F. Maloney, Robert K. Bultman* and *McNally, Maloney & Peterson, S.C.,* Milwaukee and oral argument by *Robert K. Bultman.*

For the defendant-appellant, there was a brief by *Carol S. Dittmar, Teresa E. O'Halloran* and *Garvey, Anderson, Johnson, Geraci & Mirr, S.C.,* Eau Claire and oral argument by *Carol S. Dittmar.*

¶ 1. WILLIAM A. BABLITCH, J. Heyde Companies, Inc. petitions this court to review a decision of the court of appeals,[1] which reversed the judgment of the circuit court for Eau Claire County, Eric J. Wahl, Judge. The court of appeals held that an employee's individual right and freedom to contract may not be restricted by a contract between two employers unless the employee is aware of and consents to such a restriction. We agree. A no-hire provision agreed to by employers that restricts the employment opportunities of employees without their knowledge and consent constitutes an unreasonable restraint of trade, in violation of Wis. Stat. § 103.465 (restrictive covenants) and the public policy of the state. Accordingly, we hold that the no-hire provision contained in the agreement between Greenbriar and Dove is unenforceable.

---

[1] *Heyde Companies, Inc v. Dove Healthcare, LLC,* 2001 WI App 278, 249 Wis. 2d 32, 637 N.W.2d 437.

¶ 2. Dove Healthcare, LLC (Dove) is a health care provider that operates nursing homes. Heyde Companies, Inc. (Heyde) owns Greenbriar Rehabilitation (Greenbriar), which furnishes physical therapists to nursing home facilities. In June 1997, Dove and Greenbriar entered into a Therapy Services Agreement (Agreement), whereby Greenbriar was to provide physical rehabilitation services and place physical therapists at Dove's Eau Claire facility. Although the physical therapists worked at Dove's facility, they remained at-will employees of Greenbriar.

¶ 3. The Agreement between Dove and Greenbriar contained a "no-hire" provision, which stated in relevant part:

> [Dove] acknowledges and agrees that it will not, directly or indirectly, solicit, engage, permit to be engaged or hire any Greenbriar therapists or therapist assistants to provide services for [Dove] independently, as an employee of [Dove] or as an employee of a services provider other than Greenbriar or otherwise during the term of this Agreement. . . . and for a period of one (1) year thereafter without the prior written consent of Greenbriar. If, after prior written consent by Greenbriar, any Greenbriar therapists or therapist assistants are hired or utilized by [Dove], [Dove] shall pay Greenbriar a fee of fifty percent (50%) of the subject Greenbriar employee's annual salary.

¶ 4. On October 26, 1999, Dove terminated its Agreement with Greenbriar, effective December 31, 1999. Shortly after terminating the Agreement, Dove hired one current and three former Greenbriar employees. Dove did not seek Greenbriar's written consent, nor did it pay 50% of the employees' salaries in accordance with the no-hire provision.

32

¶ 5. The employees hired by Dove testified in their affidavits that they did not know about the no-hire provision in the Agreement between Greenbriar and Dove that placed restrictions on their ability to be employed by Dove. Some of the employees hired by Dove testified that they inquired whether they would be bound by a non-compete agreement and were told by Greenbriar that they would not be subject to such restrictions.

¶ 6. In 1999, Greenbriar had contracts with approximately 35 nursing home facilities, including Dove, and employed approximately 33 therapists out of the 273 therapists who worked in the Eau Claire/Chippewa Falls area. Greenbriar primarily contracted with facilities located in the Eau Claire/Chippewa Falls area, although it also had contracts with a few facilities in the eastern part of the state.

¶ 7. Greenbriar filed suit against Dove on March 10, 2000, alleging that Dove breached the no-hire provision in the Agreement and sought payment of the 50% contractual fee for the Greenbriar employees who were hired by Dove. Dove moved for summary judgment, claiming that the no-hire provision was unenforceable and an unlawful restraint of trade. The circuit court denied Dove's motion for summary judgment. Greenbriar and Dove stipulated to findings of fact on liability and presented evidence on the issue of damages. The circuit court entered a judgment in favor of Greenbriar and awarded Greenbriar liquidated damages in the amount of $62,124.40.

¶ 8. Dove appealed the circuit court's decision. On October 23, 2001, the court of appeals reversed the judgment of the circuit court and held that the no-hire provision was an unreasonable restraint of free trade because the employees had no knowledge of the provi-

sion and did not sign any covenant not to compete. Greenbriar petitioned this court for review.

¶ 9. At issue is whether a no-hire provision contained in a contract between employers, without the knowledge and consent of the affected employees, is unenforceable as an unreasonable restraint of trade. Determining whether no-hire provisions are enforceable is a question of law. This court reviews questions of law de novo, benefiting from the analyses of the circuit court and court of appeals. *In re Corey J.G.,* 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998).

¶ 10. In general, parties are free to contract as they see fit, provided that the contract does not impose obligations that are contrary to public policy. *Journal/Sentinel, Inc. v. Pleva,* 155 Wis. 2d 704, 710–11, 456 N.W.2d 359 (1990). Public policy may be expressed by statute, administrative regulation, or by the court's expression of the policy of the common law. *N. States Power Co. v. Nat'l Gas Co.,* 2000 WI App 38, 232 Wis. 2d 541, 545–46, 606 N.W.2d 613 (Ct. App. 1999) (citing *Pedrick v. First Nat'l Bank,* 267 Wis. 436, 438–39, 66 N.W.2d 154 (1954); *M&I First Nat'l Bank v. Episcopal Homes,* 195 Wis. 2d 485, 507, 536 N.W.2d 175 (Ct. App. 1995); *Hawkins Realty Co. v. Hawkins State Bank,* 205 Wis. 406, 417, 236 N.W. 657 (1931)). In analyzing the enforceability of a no-hire provision, we review Wis. Stat. § 103.465(1999–2000),[2] which deals with restrictive covenants in employment contracts.

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

**103.465 Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to

¶ 11. Section 103.465 was enacted in response to *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 585 (1955), where the court enforced an invalid covenant not to compete insofar as it was reasonable. *Id.* at 147. The court in *Fullerton Lumber* held that the 10–year period prescribed under the restraint in question was unreasonable, but that a 3–year period was reasonable; accordingly, the court upheld the covenant for a 3–year period. *Id.* The legislature disagreed with this analysis and enacted § 103.465 in order to invalidate overly broad covenants in their entirety, and not allow courts to give effect to invalid covenants even to the extent that they are reasonable. *Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 608, 348 N.W.2d 505 (1984). Under § 103.465, "Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint."

¶ 12. Greenbriar argues that Wis. Stat. § 103.465 was enacted to protect employees, who often have unequal bargaining power, from unreasonable covenants not to compete with their employers. Greenbriar asserts that, on its face, § 103.465 only applies to re-

_____

compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

strictive covenants between employers and their employees, and not agreements between employers.

¶ 13. Wisconsin Stat. § 103.465 is broadly entitled "Restrictive covenants in employment contracts," although it only refers to covenants between employers and employees. While a covenant not to compete is typically made between an employer and its employees, it is possible, as illustrated in this case, that a restrictive covenant may be made between employers that acts as a covenant not to compete on the employees. Greenbriar argues that § 103.465 does not apply in this case because the no-hire provision was agreed to by Greenbriar and Dove, not Greenbriar and its employees. However, the explicit purpose of § 103.465, as plainly stated in the statute, is to invalidate covenants that impose unreasonable restraints on employees. This court has recognized that § 103.465 essentially deals with restraint of trade and has held that the statute applies regardless of whether a restriction is labeled a "non-disclosure" provision or a "covenant not to compete." *Tatge v. Chambers & Owen, Inc.,* 219 Wis. 2d 99, 111–12, 579 N.W.2d 217 (1998); *see also Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis. 2d 202, 218–20, 267 N.W.2d 242 (1978). In *Tatge,* this court reasoned that "it would be an exercise in semantics to overlook Wis. Stat. § 103.465 merely because paragraph 1 of the agreement is not labeled a 'covenant not to compete.' " *Tatge,* 219 Wis. 2d at 112.

¶ 14. Similarly, the fact that Greenbriar attempts to restrict its employees through a no-hire provision with Dove instead of a restrictive covenant with its employees does not change the underlying analysis. The *effect* of the no-hire provision is to restrict the employment of Greenbriar's employees; it is inconsequential whether the restriction is termed a "no-hire"

provision between Dove and Greenbriar or a "covenant not to compete" between Greenbriar and its employees. Greenbriar is not allowed to accomplish by indirection that which it cannot accomplish directly. For example, in holding that a state statute violated the 13th Amendment of the U.S. Constitution, the U.S. Supreme Court reasoned that "What the state may not do directly it may not do indirectly. . . . [An] act of Congress deprives of effect all legislative measures of any state through which, *directly or indirectly,* the prohibited thing . . . may be established or maintained . . . ." *Bailey v. Alabama,* 219 U.S. 219, 244–45 (1911) (emphasis added). Likewise, in analyzing a state tax statute, the Court stated that the "statute seeks to accomplish by indirection that which the state is constitutionally prohibited from doing directly. Such attempted evasion of the Government's constitutional immunity from state taxation cannot legally be permitted to succeed." *United States v. City of Detroit,* 355 U.S. 466, 478–79 (1958). This court has also recognized that "[t]here is no doubt of the general truth, that, in questions of this nature [constitutionality of a statute], the means are not to be regarded, but only the end, and that the restraints of the fundamental law cannot be avoided by indirection." *State ex rel. Haswell v. Cram,* 16 Wis. 343, 345 (1863).

¶ 15. In addition, it is well-established under statutory canons of construction that social legislation and statutes promoting a public interest are to be liberally construed in favor of those intended to benefit from them. *See, e.g., Paikoff v. Harris,* 185 Misc.2d 372, 377 (N.Y. App. Term 1999); *Indiana v. Kokomo Tube Co.,* 426 N.E.2d 1338, 1345 (Ind. Ct. App. 1981). In the context of penal statutes, this court has held that "if strict construction thwarts the purpose of the legisla-

37

tion, the rule of strict construction does not apply" and that the "dominating purpose of all [statutory] construction is to carry out the legislative purpose." *German v. Wisconsin Dep't of Transp.*, 2000 WI 62, ¶ 27, 235 Wis. 2d 576, 612 N.W.2d 50 (citing *State v. Kittilstad*, 231 Wis. 2d 245, 262, 603 N.W.2d 732 (1999); *State v. Rabe*, 96 Wis. 2d 48, 70, 291 N.W.2d 809 (1980))[3]. We therefore find unpersuasive Greenbriar's argument that the statute on its face does not apply.

■■■

¶ 16. It cannot be disputed that this no-hire provision acts as a restrictive covenant on Greenbriar's employees. Therefore, to determine its enforceability, we employ the five-factor analysis that is used to evaluate covenants not to compete. *Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157, 162–63, 98 N.W.2d 415 (1959). A restrictive covenant must: (1) be necessary to protect the employer; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy. *Id.; see also Streiff*, 118 Wis. 2d at 613 n.5. In addition, the following canons of construction are applied to restrictive covenants: (1) they are prima facie suspect; (2) they must withstand close scrutiny to

---

[3] *See also Wisconsin Indus. Sch. for Girls v. Clark County,* 103 Wis. 651, 659, 79 N.W. 422 (1899) (statute must be construed to give effect to the evident legislative intent though the result seems contrary to the strict letter of the statute); *Fleischmann Const. Co. v. United States,* 270 U.S. 349, 360 (1926) (strict letter of an act must yield to its evident spirit and purpose in order to give effect to the intent of the legislature); *Paikoff v. Harris,* 185 Misc.2d 372, 376 (N.Y. App. Term 1999)(in construing statute, court should consider the mischief sought to be remedied and construe statute so as to suppress the evil and advance the remedy").

pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) they are to be construed in favor of the employee. *Streiff*, 118 Wis. 2d at 610–11 (citing *Zimmerman v. Brennan,* 78 Wis. 2d 510, 514–15, 254 N.W.2d 719 (1977); *Gary Van Zeeland Talent,* 84 Wis. 2d at 218–19).

██

¶ 17. Greenbriar argues that the no-hire provision satisfies the first factor because it is necessary for protecting its interest in maintaining its employees, and to avoid serving as an involuntary employment recruiting agency for Dove. Although some kind of restriction might be necessary, Greenbriar can adequately protect itself through a reasonable covenant not to compete that complies with Wis. Stat. § 103.465. Therefore, contrary to Greenbriar's claim, the no-hire provision with Dove is *not* necessary for its protection.

¶ 18. With respect to the second factor, the one-year time limit seems reasonable.

¶ 19. With respect to the third factor, the territorial restriction in this case is potentially problematic. Greenbriar acknowledges that it has contracts with other nursing home facilities, in addition to Dove, which contain the same no-hire provision. Consequently, the employment opportunities of Greenbriar's employees are restricted not only with respect to Dove, but also with respect to all of the other facilities that have contracts with Greenbriar. In fact, Greenbriar is seeking damages from Dove for an employee who never even worked at the Dove facility. In 1999, Greenbriar had contracts with approximately 35 facilities, including Dove, throughout Wisconsin. The no-hire provision restricts Greenbriar's employees with respect to all of

these facilities, which is arguably an unreasonable territorial restriction. Greenbriar does not dispute that these facilities would have to pay the 50% fee if any of them wanted to hire a Greenbriar employee, but it claims that there is no evidence that Greenbriar therapists would be less likely to be hired because of the fee. We cannot agree. It is apparent that a nursing home facility would prefer to hire therapists who are not subject to a 50% salary "fee" that must be paid to a former employer, thereby putting the Greenbriar therapists at a disadvantage in obtaining employment.

¶ 20. Notwithstanding whether the territorial restriction of the no-hire provision is reasonable, with respect to the fourth and fifth factors, it is clear that the no-hire provision is harsh and oppressive to Greenbriar's employees and is contrary to public policy. The former Greenbriar employees who were hired by Dove testified that they had no knowledge of the no-hire provision and that Greenbriar did not ask them to sign a non-compete agreement. One of the employees hired by Dove testified that she specifically asked Greenbriar whether she would be bound by a non-compete agreement and was told that she would not be subject to such restrictions. The court of appeals has held that a valid covenant not to compete requires knowledge and consideration by the affected employee. *NBZ, Inc. v. Pilarski,* 185 Wis. 2d 827, 835–36, 520 N.W.2d 93 (Ct. App. 1994). This court has also implicitly recognized the necessity of consideration in referencing an employee's decision to sign a covenant not to compete that he or she deems unreasonable. *Tatge,* 219 Wis. 2d at 116.

¶ 21. Greenbriar is not prevented from protecting its interest in maintaining its employees, but it must do

so through a valid restrictive covenant in compliance with Wis. Stat. § 103.465. Greenbriar is not allowed to circumvent the protections under § 103.465 by restricting the employment opportunities of its employees through contracts with other employers without their employees' knowledge and consent. An employer cannot indirectly restrict employees in a way that it cannot do directly under § 103.465. At the very least, § 103.465 requires that employees know that they are subject to a restrictive covenant and that they consent to such a restriction. Accordingly, the no-hire provision, which restricts Greenbriar's employees without their knowledge and consent, is harsh and oppressive to the employees and is contrary to public policy, in violation of § 103.465.

¶ 22. Furthermore, the fundamental right of a person to make choices about his or her own employment is well-established. "[N]o one has the legal right . . . to deprive a person of the right to labor for whomsoever he will, with the consent of such other." *Cheek v. Prudential Ins. Co. of America,* 192 S.W. 387, 393 (Mo. 1916); *aff'd by Prudential Ins. Co. v. Cheek,* 259 U.S. 530, 547–48 (1922) ("[C]orporations had no lawful right to enter into a combination or agreement the effect of which was to . . . deprive former employees of their constitutional right to seek employment."). According to the U.S. Supreme Court, an individual's right to make choices about his or her own employment may not be negated by business decisions that circumscribe the employment relationship.

> That freedom in the making of contracts of personal employment, by which labor and other services are exchanged for money or other forms of property, is an elementary part of the rights of personal liberty and private property . . . .

> But the right to conduct business . . . and as such to enter into relations of employment with individuals, is not a natural or fundamental right . . . and a State in authorizing its own corporations . . . may qualify the privilege by imposing such conditions and duties as reasonably may be deemed expedient in order that the corporation's activities may not operate to the detriment of the rights of others [i.e. employees] with whom it may come in contact."

*Cheek,* 259 U.S. at 536.

¶ 23. Thus, the no-hire provision between Greenbriar and Dove is unenforceable because it is harsh and oppressive to the employees, is against public policy, and goes beyond what is necessary for Greenbriar to protect its legitimate interest in protecting the investment it has in its employees. Greenbriar is essentially attempting to enforce a covenant not to compete, which it is allowed to do, but the restriction must be reasonable in accordance with the requirements under Wis. Stat. § 103.465.

¶ 24. In addition, the few cases from other jurisdictions that have upheld no-hire provisions are distinguishable from the case at bar. Greenbriar points out that the Virginia Supreme Court has addressed the same issue and held that a no-hire provision between employers was enforceable and not against public policy. *Therapy Serv., Inc. v. Crystal City Nursing Ctr., Inc.,* 389 S.E.2d 710 (Va. 1990). The court in *Therapy Services* analyzed whether the no-hire provision constituted an unreasonable restraint of trade under antitrust principles. Importantly, the court concluded that the "restriction is reasonable . . . because it does not in any way inhibit the affected employees from seeking employment as therapists with any employer other than Crystal City." *Id.* at 712. In this case, the employ-

42

ment opportunities of the Greenbriar employees are restricted with respect to *all* of the facilities that Greenbriar has a contract with, even if an employee has never worked at any of the other facilities except for Dove. Similarly, in *Webb v. West Side Dist. Hosp.,* 144 Cal. App. 3d 946 (Cal. App. 1983), the court upheld a no-hire provision because it was limited to the physicians who had been placed at the hospital by Webb. The court reasoned that the clause was not unreasonable because it did not include physicians employed by Webb who had never actually worked at the hospital. (distinguishing *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657, 665 (Tex. Civ. App. 1975), which held that a no-hire provision was unenforceable because it went beyond what was necessary to protect Potyka's interest by restricting physicians who had never worked at the hospital).

II

¶ 25. Notwithstanding whether the no-hire provision between Greenbriar and Dove is a facial violation of Wis. Stat. § 103.465, the provision nonetheless clearly violates the public policy of the state as expressed through the common law and § 103.465 for all the reasons stated above. As discussed in section I, the no-hire provision agreed to by Greenbriar and Dove unquestionably constitutes harsh treatment to Greenbriar's employees since the employees were not aware that they would be subject to this kind of a restriction when they decided to take a job with Greenbriar. Consequently, the no-hire provision in this case constitutes an unreasonable restraint of trade in contravention of Wisconsin's public policy. As this court has stated, if a "contract is void for ... reasons, such as

public policy . . . or creates an undue hardship on the employee a court of equity will not enforce it." *Lakeside Oil,* 8 Wis. 2d at 162.

¶ 26. In sum, the no-hire provision in the Agreement between Greenbriar and Dove is an unreasonable restraint of trade and went beyond what was necessary for Greenbriar to protect its interest in maintaining its employees. Greenbriar can adequately protect its interest through a reasonable restrictive covenant in accordance with Wis. Stat. § 103.465. A no-hire provision that restricts the employment opportunities of employees without their knowledge and consent is harsh and oppressive to the employees, in violation of Wis. Stat. § 103.465 and the public policy of the state. Accordingly, we hold that the no-hire provision in this case is unenforceable.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 27. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the dissent that the no-hire provision in the contract at issue in the present case is not directly governed by Wis. Stat. § 103.465 (1999–2000).

¶ 28. The plain language of Wis. Stat. § 103.465 limits its scope to covenants "by an assistant, servant or agent not to compete with his or her employer or principal."[1] The contract at issue was not made by an assistant, servant, or agent and the employer. Rather, it was between two employers, restricting one employer's ability to hire former employees of the other employer. By this indirection, the employees' future opportunities of employment were restricted.

---

[1] Wis. Stat. § 103.465 (1999–2000).

¶ 29. Section 103.465 does not, however, occupy the field of contracts in restraint of trade. Section 103.465 expresses a distinct legislative policy of discouraging certain covenants not to compete as an unreasonable restraint of trade.

¶ 30. The common law of the state survives the enactment of § 103.465. According to the common law of this state, unreasonable restraints of trade, including contracts unreasonably restricting employment of former employees, are contrary to public policy and void.[2]

¶ 31. I write separately to explain that the no-hire contract in the present case severely restricts future employment opportunities of employees without their knowledge or consent. People agreed to work as Greenbriar's at-will employees (meaning they were free to leave employment at any time and Greenbriar was free to terminate their employment at any time for almost any reason). When the at-will employment ceased, the former Greenbriar employees would find, to

---

[2] Section 103.465 "does not change the prior law of what constitute unreasonable restraints because the section only requires the restrictions as to time and place to be reasonably necessary for the protection of the employer. If such a contract is void for other reasons, such as public policy, or sec. 133.01(1), Stats., or creates an undue hardship upon the employee a court of equity will not enforce it." *Lakeside Oil Co. v. Slutsky,* 8 Wis. 2d 157, 162, 98 N.W.2d 415 (1959). *See also Streiff v. Am. Family Mut. Ins. Co.,* 118 Wis. 2d 602, 613 n.5, 348 N.W.2d 505 (1984); *Holsen v. Marshall & Ilsley Bank,* 52 Wis. 2d 281, 190 N.W.2d 189 (1971).

For discussions of contracts in restraint of trade and against public policy, *see, e.g.,* Restatement of Contracts §§ 514–15 (1932); Restatement (Second) of Contracts §§ 178–79, 186–88 (1979).

their surprise, that they were handicapped in getting new employment by a secret deal between Greenbriar and another business.

¶ 32. I agree with the court of appeals: "The no-hire provision violates public policy by restricting Greenbriar therapists the right to freely sell their skills in the labor market. Without signing any agreement or even being given notice . . . current and former Greenbriar therapists are restricted from being employed by these facilities, unless Greenbriar gives consent and unless the facilities are willing to pay the fee."[3]

¶ 33. To assert that Greenbriar's employees are not "unreasonably restricted or otherwise hurt by the no-hire clause in the contract between Greenbriar and Dove"[4] is to ignore the harsh realities of the job market. The dissent asks, "Why should Dove, which freely agreed to pay the 50 percent premium if it hired a Greenbriar employee, be entitled to avoid its contractual obligations by asserting that *someone else* has sustained a *purely hypothetical* injury?"[5] The law of this State answers this question: freedom to contract, like other freedoms, has limitations.

¶ 34. The limitation on the freedom to contract in the present case is the public's interest in not allowing businesses to unduly and unfairly limit the ability of former employees to seek new employment. It is an unfair and an undue limitation on an employee's right to seek employment for an employer to contract away an employee's freedom of future employment without that employee's ever knowing about or consenting to

---

[3] *Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2001 WI App 278, ¶ 13, 249 Wis. 2d 32, 637 N.W.2d 437.

[4] Dissent at ¶ 51.

[5] Dissent at ¶ 57.

the limitation. Employees should be able to decide whether they want to work for Greenbriar under these conditions. The secret deal cut in the present case between two businesses affecting non-consenting employees is unduly harsh and oppressive to the employees and is therefore contrary to the common law and public policy of the state of Wisconsin.

¶ 35. For the foregoing reasons, I concur in affirming the decision of the court of appeals.

¶ 36. DIANE S. SYKES, J. *(dissenting).* I respectfully dissent. The majority invalidates the contract at issue in this case, primarily on the basis of a statute that does not apply to contracts of this type, and, secondarily, on the basis of the public policy expressed in the inapplicable statute.

¶ 37. The majority analyzes this case as though it were a lawsuit between an employer and a former employee, but it is not. It is a breach of contract lawsuit between two sophisticated businesses. The contract is in writing and was freely entered into with no suggestion of undue influence or unequal bargaining power. One party has admittedly breached the contract and is now attempting to invoke statutory and public policy arguments that belong to employees, not businesses, in an attempt to avoid liability for the breach. The majority, like the court of appeals, has fallen for this subterfuge, and in so doing, has created a rule of law that effectively prevents companies in this state from achieving any contractual protection for their investments in employee recruitment and training against raids by their customers.

¶ 38. The majority concludes that the no-hire provision in the contract between Greenbriar Rehabilitation and Dove Healthcare violates Wis.

Stat. § 103.465 and is therefore unenforceable. The statute, however, appears in the chapter entitled "Employment Regulations," and by its terms applies only to restrictive covenants in *employment contracts:*

### Restrictive covenants in employment contracts

*A covenant by an assistant, servant or agent not to compete with his or her employer or principal* during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465 (emphasis added).

¶ 39. The Greenbriar/Dove contract is plainly not an employment contract. It is not a "covenant by an assistant, servant or agent not to compete with his or her employer" within the meaning of Wis. Stat. § 103.465. It is a contract between two businesses for the provision of professional services. The majority dismisses this distinction as "inconsequential." Majority op., ¶ 14. To the contrary, it is dispositive. The statute does not apply.

¶ 40. Dove contracted to receive rehabilitation therapy services from Greenbriar, and in so doing, agreed not to hire Greenbriar's employees, without Greenbriar's consent, for a specified term (while the contract for rehabilitation services was in effect and for one year thereafter). Dove further agreed to pay a specified penalty (50 percent of the employee's annual salary) if it hired a Greenbriar employee.

¶ 41. The majority states categorically: "[i]t cannot be disputed that this no-hire provision acts as a restrictive covenant on Greenbriar's employees." Majority op., ¶ 16. Well, yes, it can, because the truth is exactly the opposite: what is actually undisputed and undisputable here is that the no-hire clause did not bind or restrict Greenbriar's employees in any way. It imposed no territorial or other restriction whatsoever on where or with whom they might seek or obtain employment.

¶ 42. Greenbriar's at-will employee therapists were thus perfectly free to leave Greenbriar at any time and sell their services anywhere in the marketplace, even in competition with Greenbriar, and even to Greenbriar's customers. Greenbriar's customer, Dove, was contractually required to obtain Greenbriar's consent should it wish to hire any Greenbriar employee, and further required to compensate Greenbriar according to the terms of the contract if it did so. The no-hire provision conferred rights and imposed obligations on *supplier* and *customer,* not *employer* and *employee.* It therefore cannot be construed to be—or even to "act as"—an employee covenant not-to-compete of the type governed by Wis. Stat. § 103.465. *See* Majority op., ¶¶ 13, 16.

¶ 43. That the no-hire clause made Greenbriar's employees somewhat more difficult and expensive for Dove to hire does not trigger the application of Wis. Stat. § 103.465 or otherwise transform this business agreement into an employment contract for purposes of determining the statute's applicability. Greenbriar employed 33 therapists in the Eau Claire/Chippewa Falls region. There were 273 therapist jobs in the area, giving Greenbriar a market share of approximately 12 percent. Clearly, the nursing facilities that were Greenbriar's

customers—including Dove—represent only a small fraction of the marketplace for therapists in the Eau Claire/Chippewa Falls area.

¶ 44. The majority states that the "explicit purpose" of the statute is "to invalidate covenants that impose unreasonable restraints on employees." Majority op., ¶ 13. Actually, the statute states that "[a]ny covenant, *described in this section,* imposing an unreasonable restraint is illegal, void and unenforceable . . . ." Wis. Stat. § 103.465 (emphasis added). If a covenant is not one that is described in the subsection (that is, a covenant between an employer and employee), it cannot possibly violate the statute or otherwise implicate the statute's purpose.

¶ 45. The majority states that "Greenbriar is not allowed to accomplish by indirection that which it cannot accomplish directly." Majority op., ¶ 14. If by this the majority means that the no-hire provision is essentially the equivalent of an employee non-compete covenant, it is simply incorrect, for the reasons noted above. The contract between Greenbriar and Dove did not in any way bind Greenbriar's employees or prohibit their freedom of movement in the employment marketplace. It merely imposed a financial obligation on Greenbriar's client, Dove, should it wish to hire a Greenbriar employee.

¶ 46. There is another problem with the majority's statement that the no-hire provision attempts to "accomplish by indirection that which it cannot accomplish directly": it premises the determination of the statute's threshold applicability on a conclusion that it has been violated. This is odd reasoning, a little like saying "the statute governs employment

agreements, which this obviously is not, but if it were, it would violate the statute, and therefore the statute must apply."

¶ 47. The majority relies on *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 579 N.W.2d 217 (1998), and *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 267 N.W.2d 242 (1978), but those cases concerned restrictive covenants contained in employment agreements, which, unlike the agreement at issue here, are squarely within the statute.

¶ 48. The majority also relies on broad language from several older cases regarding state statutes that "indirectly" contravene the constitution. Majority op., ¶ 14. These cases are limited to constitutional violations, and do not support the notion that a party can avoid liability for breach of contract by invoking an inapplicable statute or alleging a violation of the rights of third parties who have suffered no injury. In any event, there is no constitutional argument present here.

¶ 49. Also, and perhaps most importantly, the scope of the majority's direction/indirection holding is uncertain. The majority places no limits on it, and so its sweep is potentially quite broad. Is it true that henceforward courts will have the authority to declare that a facially inapplicable statute nevertheless applies because it has been violated "by indirection"? This seems rather revolutionary.

¶ 50. If the statute does not apply, then the expression of public policy contained in it cannot possibly be implicated. The majority correctly notes that the statute was enacted in response to *Fullerton Lumber Co. v. Torborg*, 274 Wis. 478, 80 N.W.2d 461 (1957), and was intended to protect employees from those employers who, because of their superior bargaining

51

power, could impose unreasonable and excessively restrictive non-compete covenants in employment agreements. *Streiff v. American Family Mut. Ins. Co.,* 118 Wis. 2d 602, 608–09, 348 N.W.2d 505 (1984). That public policy is not implicated in a contract between two businesses such as the one at issue here.

¶ 51. Again, Greenbriar's employees are not unreasonably restricted or otherwise hurt by the no-hire clause in the contract between Greenbriar and Dove. Indeed, Dove hired Greenbriar's employees despite the no-hire clause. Nonetheless, the majority now concludes that a purely theoretical injury to Greenbriar's employees (which hardly rises to the level of an unreasonable or excessive restraint) somehow excuses Dove's liability for its breach of contract.

¶ 52. The majority's analysis of the no-hire provision under the five-part test for a valid employee non-compete under Wis. Stat. § 103.465 is also questionable. The majority concludes that the no-hire provision was unnecessary for the protection of the employer because the employer could have protected its investment by entering into non-compete agreements with its employees instead. Majority op., ¶ 17. Greenbriar's therapists were at-will employees. From the employees' standpoint (and the statute is intended to protect the interests of employees), how could an employee non-compete agreement possibly be considered an improvement over a no-hire agreement? In *Tatge,* the plaintiff, an at-will employee, was fired for refusing to sign a non-compete/non-disclosure agreement, and this court said he had no recourse. *Tatge,* 219 Wis. 2d at 123. An employee non-compete would restrict the employee's freedom of movement in the marketplace; the no-hire agreement between Greenbriar and Dove does not.

¶ 53. Furthermore, the majority's evaluation of the necessity of the covenant appears to rest entirely on its conclusion that it is unreasonable. This is circular. The necessity (or lack thereof) of the covenant is one measure of its reasonableness under the test. The majority is basically saying that the covenant is unnecessary because it is unreasonable, therefore it is unreasonable because it is unnecessary.

¶ 54. The majority also concludes that the no-hire provision contains an "arguably . . . unreasonable territorial restriction," which is "potentially problematic." Majority op., ¶ 19. First of all, there are "arguable" or "potentially problematic" issues in every case; our job is to resolve the argument or problem one way or the other.

¶ 55. More importantly, the no-hire provision does not contain a territorial restriction at all; it only prohibits Dove from hiring Greenbriar's employees without consent and without paying a fee. That Greenbriar's contracts with its other customers contained similar no-hire clauses does not operate to create a "territorial restriction" for purposes of Wis. Stat. § 103.465, and certainly does not amount to an "unreasonable territorial restriction," considering that Greenbriar's area market share for therapists was only 12 percent.

¶ 56. On this point, the majority also notes the obvious—that nursing homes would prefer to hire therapists without having to pay a 50 percent premium —and then concludes that this puts Greenbriar's employees "at a disadvantage in obtaining employment," which apparently is unacceptable. Majority op., ¶ 19. By this measure, all no-hires and non-competes are per se unreasonable, because they *always* result in *some*

competitive disadvantage to the relevant employees. The real question is, how much is too much? The majority does not say.

¶ 57. The majority also concludes that the no-hire provision is "harsh and oppressive to Greenbriar's employees and is contrary to public policy" because it was entered into without the employees' knowledge and consent and without consideration to the employees. Majority op., ¶ 20. Is the majority actually suggesting that an employee—every employee—has a veto, and a right to consideration, whenever his or her employer negotiates a contract with a customer that includes a no-hire clause? Why should Dove, which freely agreed to pay the 50 percent premium if it hired a Greenbriar employee, be entitled to avoid its contractual obligations by asserting that *someone else* has sustained a *purely hypothetical* injury?

¶ 58. The majority's reliance on *Cheek v. Prudential Ins. Co. of America,* 192 S.W. 387 (Mo. 1916), *aff'd Prudential Ins. Co. v. Cheek,* 259 U.S. 530 (1922) is strained. The defendant insurance companies in that case had a complete monopoly—100 percent market share—and agreed among themselves not to hire each other's employees. An outright prohibition of hiring across an entire market that operates, therefore, as a complete deprivation of the right to seek employment is a far cry from the facts of this case, in which hiring is merely burdened by a fee and 88 percent of the market remains completely open.

¶ 59. The majority's analysis of this case essentially makes *all* no-hire provisions unenforceable.[1] The majority opinion therefore deprives companies in this

---

[1] The majority has rewritten Wis. Stat. § 103.465 so that it now reads:

state of the ability to contractually protect their invest-
ments in employee recruitment and training against
poaching by their customers.

¶ 60. To the extent that Dove relies on broader
arguments under Wis. Stat. § 133.01, which the major-
ity does not address, its attempt to invalidate the
no-hire provision must also fail. Wisconsin Stat-
ute § 133.01, Wisconsin's equivalent of section 1 of the
Sherman Antitrust Act, declares contracts in restraint
of trade illegal, and has been interpreted consistently
with the "rule of reason" in federal antitrust law, to
prohibit only unreasonable restraints of trade. *Indepen-
dent Milk Producers Co-op v. Stoffel,* 102 Wis. 2d 1, 7,
298 N.W.2d 102 (Ct. App. 1980). Reasonableness is
determined by reference to the purpose of the restraint,
the market power of the party who benefits from the
restraint, and the anticompetitive effect of the re-
straint. *Grams v. Boss,* 97 Wis. 2d 332, 348, 294 N.W.2d
473 (1980).

¶ 61. In Wisconsin, non-compete agreements be-
tween businesses (as contrasted with employer/em-
ployee non-competes) have been evaluated on the basis
of a three-part test for reasonableness: 1) is the agree-
ment reasonably necessary for the protection of the
beneficiary; 2) is it reasonable as between the

---

A covenant ~~by an assistant, servant or agent~~ not to compete
~~with his or her employer or principal during the term of the~~
~~employment or agency, or after the termination of that employ-~~
~~ment or agency, within a specified territory and~~ during a
specified time is lawful and enforceable only if the restrictions
imposed are reasonably necessary for the protection of the
employer or principal. Any covenant, ~~described in this subsec-~~
~~tion,~~ imposing an ~~unreasonable~~ restraint is illegal, void and
unenforceable even as to any part of the covenant or perfor-
mance that would be a reasonable restraint.

parties, considering the time, space, purpose and scope of the agreement; and 3) is it specially injurious to the public? *Reiman Assoc. v. R/A Adver., Inc.,* 102 Wis. 2d 305, 309, 306 N.W.2d 292 (Ct. App. 1981). A no-hire agreement between a supplier and its customers is not technically the equivalent of a non-compete agreement between businesses, but it is analogous. There is some obvious overlap between this test and the test for a valid employee non-compete covenant under Wis. Stat. § 103.465, which I have already addressed at some length above.

¶ 62. While it is conceivable that some no-hire agreements would fail this test, I am satisfied that the no-hire provision in the contract between Greenbriar and Dove is not an unreasonable restraint of trade under Wis. Stat. § 133.01. It is reasonably necessary for the protection of Greenbriar's investment in the recruitment and training of its employees; otherwise, Greenbriar becomes an involuntary training and recruitment agency for Dove. Because it is intended to protect Greenbriar's investment in this regard, the agreement is also reasonable in purpose. It is also reasonable in time, in that it extends only one year after termination of the agreement. It is reasonable in scope, because it binds only Dove and does not entirely prohibit the hiring of Greenbriar's employees, but, rather, imposes only the requirements of consent and payment of a reasonable fee. And, finally, it is not especially injurious to the public, as there is no evidence that it has an anticompetitive effect on the market for therapists in the Eau Claire/Chippewa Falls area. Reasonableness as to space, which concerns territorial restrictions, is not at issue here, for the reasons noted in ¶ 20. *See Reimann,* 102 Wis. 2d at 312 n.6.

¶ 63. In short, neither Wis. Stat. § 103.465 nor Wis. Stat. § 133.01 provides refuge for Dove in this case. Wisconsin Statute § 103.465 does not apply, and the no-hire provision is not contrary to the public policy expressed in that statute. Furthermore, the no-hire provision is not unenforceable as an unreasonable restraint of trade under Wis. Stat. § 133.01. Accordingly, the no-hire provision is enforceable. "Contract law rests on obligations imposed by bargain," and its integrity depends in no small part on the willingness of courts "to protect the expectancy interests of parties to private bargained-for agreements" and "hold commercial parties to their promises." *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 404, 573 N.W.2d 852 (1998). I would reverse the court of appeals, and reinstate the judgment of the circuit court.

¶ 64. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

